**[Cite as *In re S.D.*, 2020-Ohio-3267.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: S.D.

C.A. No.     29415

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 16-08-688

DECISION AND JOURNAL ENTRY

Dated: June 10, 2020

HENSAL, Judge.

{¶1}    Appellant, J.W. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her minor child in the legal custody of a paternal aunt ("Aunt").  This Court affirms.

I.

{¶2}    Mother is the biological mother of S.D., born March 30, 2013.  Mother has another minor child, J.W., who was also removed from her custody at the same time as S.D.  Because the trial court denied the legal custody motion pertaining to J.W. and continued him in the temporary custody of CSB, this Court dismissed J.W. from this appeal for lack of a final, appealable order.  S.D.'s father did not appeal from the trial court's judgment.

{¶3}    On May 13, 2016, S.D.'s three-month-old sibling died in a crib while Mother was home but not tending to the child.  There was no evidence that Mother had harmed the baby, but she had not been caring for him during the hours before and after his death.  CSB later filed a

complaint, alleging that S.D. was a dependent child because of the facts surrounding her sibling's death.

{¶4} The record reveals that the night before the infant's death, Mother had been drinking. She did not go to sleep until 4:30 a.m. and did not wake until 2:00 p.m. Mother reported that she checked on the infant at that time and again between 5:00 and 7:00 p.m., but each time she believed that he was still sleeping and did not feed him or remove him from the crib. When she checked the crib at 8:55 p.m., she discovered that the child was cold.

{¶5} Mother contacted authorities and the child and was later pronounced dead. The medical examiner determined that the infant had died approximately six hours before he was first examined at the scene. Mother was charged with involuntary manslaughter, but later pleaded guilty to felony child endangering and was placed on probation for 36 months.

{¶6} The juvenile court adjudicated S.D. a dependent child and placed her in the temporary custody of Father under an order of protective supervision. After the guardian ad litem expressed concern about the care that S.D. was receiving in Father's custody, the juvenile court removed S.D. from Father's home and later placed her in the temporary custody of Aunt. Father later moved out of state and no longer maintained contact with S.D. or Father's extended family.

{¶7} The guardian ad litem later moved for S.D. to be placed in the legal custody of Aunt. Alternatively, Mother and Father each separately moved for legal custody of S.D. CSB took no formal position on any of the final dispositional motions and did not file a brief in this appeal.

{¶8} The matter proceeded to a final dispositional hearing. The guardian ad litem presented several witnesses to support placing S.D. in the legal custody of Aunt. Mother appeared

at the hearing with counsel. Father did not appear at the hearing but was represented by counsel. The parents did not present any evidence to support their respective motions for legal custody.

{¶9} Following the dispositional hearing, the magistrate decided that S.D. should be placed in the legal custody of Aunt. Mother filed objections to the magistrate's decision, which were later overruled by the trial court. The trial court placed S.D. in the legal custody of Aunt and granted Mother parenting time, to be arranged by the parties. Mother appeals and raises one assignment of error.

ASSIGNMENT OF ERROR

THE TRIAL COURT'S DECISION AFFIRMING THE GRANT OF LEGAL CUSTODY OF THE MINOR CHILD TO PATERNAL AUNT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶10} Mother's sole assignment of error is that the trial court's decision was not supported by the weight of the evidence presented at the hearing. An award of legal custody will not be reversed if the judgment is supported by a preponderance, or a greater weight, of the evidence. *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7. Our standard of review is whether a legal custody decision was against the manifest weight of the evidence. *Id.* In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶11}    Mother's implicit argument on appeal is that the trial court should have placed S.D. in her legal custody rather than in the legal custody of Aunt.  Because Mother was seeking legal custody, she had the burden to prove that it was in the best interest of S.D. to be placed in her legal custody.  *In re T.R.*, 9th Dist. Summit Nos. 25179 and 25213, 2010-Ohio-2431, ¶ 27.  Mother, however, neither presented any evidence to support her motion for legal custody, nor did she argue in the trial court that legal custody to her was in the best interest of S.D.

{¶12}    Instead, Mother argued in the trial court and again on appeal that she had complied with the requirements of the case plan and/or the conditions of her probation.  This Court has repeatedly stressed that "evidence of case plan compliance may be relevant to the trial court's best interest determination, but it is not dispositive."  *In re G.A.*, 9th Dist. Summit Nos. 28664 and 28665, 2017-Ohio-8561, ¶ 13, citing *In re J.J.*, 9th Dist. Summit No. 22236, 2004-Ohio-6538, ¶ 8.

{¶13}    Moreover, although there was evidence that Mother had complied with some of the requirements of her probation and her case plan, Mother had not provided proof that she was employed or had engaged in counseling.  More significantly, Mother had not complied with a primary requirement of her probation and the case plan that she abstain from using drugs and drinking alcohol.  Mother admitted to occasionally having a few beers during this case.  There was other evidence that Mother had been seen consuming alcohol on a regular basis during this case, including while S.D. had weekend visits with her.  The trial court placed great emphasis on the fact that Mother was continuing to drink alcohol, as her alcohol consumption was related to her failure to care for her infant child who died while unattended in his crib.  No evidence was presented at the hearing to alleviate the trial court's concern that Mother's ongoing alcohol use affected her ability to provide suitable care for S.D.

{¶14} The trial court's decision about the final disposition of S.D. properly focused on the child's best interest. "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. "The critical inquiry before awarding legal custody is to consider the current parenting abilities of each potential custodian and to determine whether it is in the best interest of the child to be placed in the legal custody of any of them." *In re K.D.*, 9th Dist. Summit No. 28459, 2017-Ohio-4161, ¶ 24, citing *In re K.C.*, 9th Dist. Summit Nos. 26992 and 26993, 2014-Ohio-372, ¶ 20.

{¶15} "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision on the best interest of the child." *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11. The juvenile court is guided by the best interest factors set forth in Revised Code Section 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child with her parents, siblings, and other significant people in the child's life; the child's wishes; the custodial history of the child; and the child's need for permanence, and whether any of the factors set forth in Revised Code Section 2151.414(E)(7) through (11) have been established. There was no evidence that any of the factors set forth in Section 2151.414(E)(7) through (11) applied to the facts of this case.[1]

---

[1] Section 2151.414(E)(7) involves convictions of certain enumerated offenses against the child, a sibling, or another child living in the household. Although Mother was convicted of child endangering for the death of S.D.'s infant sibling, there was no evidence that she was convicted under Section 2919.22(B)(2), the only subsection of that crime included in Section 2151.414(E)(7).

{¶16} The juvenile court may also look to the best interest factors in Revised Code Section 3109.04(F)(1) for guidance. *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850 and 15CA010860, 2017-Ohio-1, ¶ 17. Of relevance here, and closely tied to the first best interest factor under Section 2151.414(D), Section 3109.04(F)(1) factors include the child's adjustment to her home, school, and community. R.C. 3109.04(F)(1)(d).

{¶17} Mother has failed to argue or demonstrate that the trial court lost its way in concluding that legal custody to Aunt was in the best interest of S.D. The trial court's best interest inquiry began with a consideration of S.D.'s interaction and interrelationships with significant people in her life and her adjustment to her current environment. Although Mother's initial attendance at weekly supervised visits was not consistent, she began attending more regularly and interacted well with S.D.

{¶18} Mother's visits were later expanded to unsupervised weekend visits in the home of the maternal grandfather, where S.D.'s older sibling was temporarily placed. On May 11, 2018, however, the case plan was amended to require that all of Mother's visits with S.D. be supervised by an adult approved by CSB. The guardian ad litem had expressed serious concerns that Mother was continuing to drink alcohol on a regular basis, even during her visits with S.D.

{¶19} In Aunt's home, on the other hand, S.D. lived in a stable and loving environment and was thriving. S.D. lived there with Aunt and Aunt's biological son. The record also reveals that, long before this case began, Aunt often cared for S.D. and the child spent many nights and weekends at her home. Aunt has no prior criminal or CSB history and no one questioned her ability to provide S.D. with appropriate care. In fact, during the hearing, the only criticism about Aunt's home was that S.D.'s bedroom, which she had to herself, was rather small.

{¶20} Next, the trial court considered the child's wishes. Five-year-old S.D. had vacillated during this case between wanting to go home to live with Mother and wanting to stay with Aunt. The guardian ad litem believed that S.D. wanted to live with Mother because S.D. loved her older sibling, J.W. J.W. was currently living in the temporary custody of the maternal grandfather, and Mother currently lived in the grandfather's home.

{¶21} The guardian ad litem opined that legal custody to Aunt was in the best interest of S.D. The guardian ad litem emphasized Mother's ongoing alcohol use and that she had not engaged in mental health or substance abuse treatment. Mother and CSB had downplayed earlier allegations that Mother had abused S.D., but the guardian ad litem expressed concern about an incident three years earlier when Aunt took S.D. to the hospital because the child came to her home with bruises on her body.

{¶22} Although CSB investigated allegations that Mother had abused S.D., it ultimately concluded that it had been an incident of excessive physical discipline by Mother. Mother admitted that she had used a belt to punish then two-year-old S.D. and that she had left marks on her. The guardian ad litem testified that, although anger management was not part of Mother's case plan, counseling was, and Mother did not complete that aspect of the case plan. She remained concerned that Mother had not sufficiently addressed the problems that brought S.D. into CSB custody and did not believe that Mother could safely parent her without supervision.

{¶23} By the time of the hearing, S.D.'s custodial history had included more than two years living outside Mother's custody in temporary placements. She needed a legally secure permanent placement and there was no evidence to demonstrate that Mother could provide her with a stable home at that time. S.D. was doing well in Aunt's home, where she had been living

for the past seven months. The trial court reasonably concluded that Aunt could provide S.D. with a suitable home.

{¶24} Mother has failed to demonstrate that the trial court lost its way in concluding that legal custody to Aunt was in the best interest of S.D. Mother's assignment of error is overruled.

## III.

{¶25} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
SCHAFER, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE CORGAN, Assistant Prosecuting Attorney, for Appellee.

JOSEPH M. KERNAN, Guardian ad Litem.