[Cite as *In re A.W.*, 2021-Ohio-2975.]

STATE OF OHIO         )               IN THE COURT OF APPEALS
                        )ss:          NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN    )

IN RE: A.W.                      C.A. No.     20CA011671
      J.V.

                                  APPEAL FROM JUDGMENT
                                  ENTERED IN THE
                                  COURT OF COMMON PLEAS
                                  COUNTY OF LORAIN, OHIO
                                  CASE Nos.    18JC54878
                                                    18JC54879

DECISION AND JOURNAL ENTRY

Dated: August 30, 2021

HENSAL, Presiding Judge.

{¶1} Appellant Mother appeals the judgment of the Lorain County Court of Common Pleas, Juvenile Division, that granted Appellee-Father's/Interested Third Party's motion for legal custody of A.W. and J.V. This Court reverses and remands.

I.

{¶2} Mother is the biological mother of A.W. (d.o.b. 1/16/09) and J.V. (d.o.b. 7/12/15). Father V. is the biological father of J.V. Father W. ("Father") is the biological father of A.W. and the interested third party as to J.V.

{¶3} In 2016, Lorain County Children Services ("LCCS" or "the agency") removed the children based on concerns regarding Mother's mental health and substance abuse issues, domestic violence between Mother and Father V., Father V.'s incarceration, and Father's lack of consistent contact with A.W. Both children were adjudicated neglected and dependent but were returned to

Mother's legal custody shortly thereafter. LCCS received three additional referrals regarding the children, and the agency worked informally with Mother to address ongoing concerns.

{¶4} In July 2018, LCCS filed a second complaint, again alleging that A.W. and J.V. were neglected and dependent children. Concerns included Mother's mental health and substance abuse issues, ongoing domestic violence between Mother and Father V., Mother's altercations with her mother and threats of violence against neighbors while intoxicated, and deplorable conditions in Mother's home. After hearings, the children were adjudicated neglected and dependent, ordered into the temporary custody of LCCS, and placed in a foster home. The parents were granted supervised visitation. The juvenile court adopted the agency's case plan as the order of the court.

{¶5} The agency's original case plan noted concerns regarding all three parents and included substantially identical objectives for each. The case plan objectives included: (1) mental health assessment and follow all recommendations; (2) substance abuse assessment, follow all recommendations, and obtain sobriety sponsor; (3) domestic violence assessment, follow recommendations, and develop insight; (4) obtain safe and stable housing with working utilities; (5) show the ability to meet the basic needs of the children; (6) demonstrate adequate parenting skills by communicating effectively with caregivers and attending medical appointments, family team decision meetings, and other scheduled events; and (7) cooperate with the caseworker and other professionals. Mother's objectives were intended to help her address her mental health issues, remain sober, avoid domestic violence situations, and develop an understanding of the impact of her substance abuse on her parenting abilities. Father's objectives were designed to address his acknowledged prior diagnosis for bipolar disorder, as well as agency concerns that

Father had not had any contact with A.W. for two years and that he had admitted having engaged in past incidents of domestic violence with Mother.

{¶6} Within a couple months, LCCS amended the case plan to change Father's visitation from supervised to monitored based on Father's compliance with case plan objectives and limited safety concerns. All case plan objectives remained the same. Two months later, the agency again amended the case plan to change Father's visitation from monitored to unsupervised within the community, and to combine Mother's and Father V.'s visitation as they were in a relationship. Again, no case plan objectives were modified or deleted.

{¶7} Father requested that LCCS complete a home study on him because he was interested in placement of both children. While the agency does not normally conduct a home study of a parent, it does when the parent seeks placement as an interested third party of a nonbiological child. Father moved for legal custody of both A.W., his biological child, and J.V., a child not biologically related to him. Mother filed a motion for legal custody shortly thereafter.

{¶8} LCCS removed the children from their foster home and placed them both with Father after the home study concluded he was suitable for placement. The agency again amended the case plan, removing Father V. as he had informed the agency that he was not interested in reunification with J.V., and reinstating Mother's individual two-hour weekly supervised visitation.

{¶9} The magistrate held a final dispositional hearing on five days spanning a six-month period. Mother and Father each had a pending motion for legal custody of both children. Although LCCS had not filed a dispositional motion, the assistant prosecutor informed the court that the agency supported Father's motion. At the conclusion of the hearing, the magistrate issued a decision granting Father's motion for legal custody of both A.W. and J.V., and awarding Mother limited supervised visitation. Mother filed timely objections.

{¶10} After the parties had the opportunity to file briefs and present oral arguments, the juvenile court issued a judgment overruling Mother's objections and granting legal custody of the children to Father. Mother filed a timely appeal and raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT'S DECISION TO AFFIRM THE MAGISTRATE'S DECISION GRANTING FATHER'S MOTION FOR [LEGAL] CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, CONTRARY TO LAW AND/OR AN ABUSE OF DISCRETION AND WAS NOT IN THE MINOR CHILDREN'S BEST INTEREST.

{¶11} Mother argues that the juvenile court's award of legal custody of A.W. and J.V. to Father was against the manifest weight of the evidence and contrary to the best interest of the children. This Court agrees.

On appeal, an award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence. Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. In other words, when the best interest of the child is established by the greater weight of the evidence, the trial court does not have discretion to enter a judgment that is adverse to that interest.

(Internal citations and quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7.

{¶12} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal citations and quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶13} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. In that regard, the juvenile court is guided by the best interest factors enumerated in Revised Code Section 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in Section 2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 9th Dist. Summit Nos. 26976 and 26977, 2014-Ohio-2748, ¶ 16. In addition, the juvenile court may also look to the best interest factors in Section 3109.04(F)(1) for guidance. *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850 and 15CA010860, 2017-Ohio-1, ¶ 17. While some factors overlap with those above, others include the child's adjustment to his or her environment; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship orders; certain indicia of violence, abuse, or neglect in any household involved; and whether a parent plans to or has established a residence outside of Ohio. R.C. 3109.04(F)(1).

{¶14} Significantly, Mother does not argue that the evidence demonstrated that she had fully complied with her case plan objectives and remedied the agency's concerns regarding her ability to provide a safe and stable home for the children. Instead, Mother challenges the juvenile

court's award of legal custody of both children to Father in lieu of granting a six-month extension of temporary custody to allow the agency to properly investigate concerns regarding Father. Mother focuses her argument on both Father's failure to demonstrate that he had complied with his case plan objectives to address issues identified by the agency and LCCS' failure to hold Father to the obligations the case plan imposed upon him and investigate ongoing issues. Accordingly, Mother argues that the juvenile court erred by finding that an award of legal custody to Father was in the children's best interest at that time.

{¶15} This Court notes with some concern that LCCS had not filed a motion for consideration at the sunset dispositional hearing. Section 2151.415(A) directs a public children services agency who has temporary custody of a child to file a dispositional motion no later than 30 days prior to the expiration of the temporary custody order. Initial temporary custody orders expire one year after the date of the filing of the complaint or the date the child was first taken into shelter care. R.C. 2151.353(G). The agency must, therefore, move for one of five enumerated dispositional options approximately one month before the sunset date. Those options include a return of the child to the parent's legal custody, an order for protective supervision, legal custody to a relative or interested third party, permanent custody, and placement in a planned permanent living arrangement. R.C. 2151.415(A)(1)-(5).[1]

{¶16} Section 2151.415(F), however, provides that the juvenile court may conduct a hearing to determine whether to place a child in any of the five enumerated custodial dispositions in subsections (A)(1)-(5) on any party's motion or even on the court's own motion in the best interest of the child. Because the agency initiated the case, developed the case plan to address concerns and facilitate a permanency goal, and is in a position to present evidence offering the

---

[1] Requests for extensions of temporary custody are governed by Section 2151.415(D).

greatest insight into any prospective custodian's ability to provide a safe and stable home for a child, the better practice would be for the agency to file a sunset dispositional motion. Instead, the agency here allowed the parents to prosecute the case. However, we recognize the juvenile court's authority to consider the parents' motions and issue a final dispositional order as to A.W. and J.V. in the absence of a motion filed by the agency.

{¶17} When considering the parties' motions for legal custody, the trial court was required to hold each moving party to his or her respective burden of proof. *See In re S.D.*, 9th Dist. Summit No. 29415, 2020-Ohio-3267, ¶ 11. As Father had filed a motion for legal custody, he maintained the burden of proving by a preponderance of the evidence that placement of the children in his legal custody was in their best interest. *Id.*, citing *In re T.R.*, 9th Dist. Summit Nos. 25179 and 25213, 2010-Ohio-2431, ¶ 27.

{¶18} Mother argues that the juvenile court erred by granting Father's motion for legal custody because the preponderance of the evidence did not support the award. Specifically, Mother argues that Father's testimony was not credible and that he did not demonstrate that he had addressed LCCS' concerns by complying with his case plan objectives. In addition, she argues that LCCS and other professionals involved with Father accepted Father's assertions at face value despite contrary indications of issues, as well as unaddressed historical concerns.

{¶19} Father presented the testimony of both agency caseworkers assigned to the case. Both testified as to ongoing concerns and unresolved issues associated with Mother. Mother does not challenge that evidence.

{¶20} As to Father, the caseworkers were satisfied that Father's combined mental health and substance abuse assessment resulted in no recommendations for treatment even though it was based on Father's self-reporting and Father has a history of both mental health and substance abuse

issues. Although Father had admitted a prior diagnosis for bipolar disorder, the caseworkers were not concerned that he was not receiving mental health services, by way of either counseling or medication. One of the caseworkers testified that she did not know whether bipolar disorder could resolve without any treatment. In any event, the agency did not do anything to follow up on Father's mental health issues because they were merely historical concerns.

{¶21} The initial caseworker testified that the agency did not require drug screens of Father because, again, there were only historical concerns from two years earlier, and no current concerns as indicated by Father's assessment based on self-reporting. It is significant that the agency did require additional assessments for Mother, notwithstanding the lack of any requirement for follow up treatment based on her initial assessment, because of Mother's historical issues with both mental health and substance abuse issues.

{¶22} Of even greater concern is LCCS' failure to investigate ongoing concerns regarding Father's participation in intimate partner violence. While focusing on Mother's volatile relationships, the agency minimized Father's involvement in domestic violence, even as it related to Mother. For example, although Father stabbed Mother with a fork during an altercation, the caseworker was not concerned because the incident occurred ten years earlier, Father claimed not to know how the fork ended up in Mother's ankle, and Father's domestic violence charge was resolved by plea agreement as a conviction for disorderly conduct persisting. Mother obtained a temporary protection order against Father because of that conviction. Nevertheless, although she was the caseworker at the time the case plan was amended, the initial caseworker did not remember that there was a domestic violence case plan objective for Father. In fact, the caseworker did not believe that Father had any obligation to complete a domestic violence assessment and expressed surprise that such an objective would still be on the current case plan.

{¶23} The caseworker did not know if Father reported his history of domestic violence during his mental health assessment. She knew, however, that there was no requirement for Father to participate in anger management based on his assessment. The caseworker admitted that the juvenile court should consider Father's failure to obtain a domestic violence assessment if that objective remained on his case plan. The record indicates that Father's domestic violence case plan objective was never removed.

{¶24} Despite completing a home study on Father in January 2019, the agency did not discover any other charges or investigations for intimate partner violence by Father. Although the legal custody hearing took place from May 19, 2019, through November 19, 2019, and the ongoing caseworker provided testimonial updates on four hearing dates, the agency relied solely on information obtained for purposes of Father's home study and disregarded information indicating that Father had engaged in domestic violence against a paramour in 2017. It was alleged in that case that Father punched a woman who was pregnant with another of his children. Even when presented with evidence of an outstanding warrant for Father's arrest based on a pending domestic violence charge arising out of the 2017 incident, the agency home study assessor testified that she was not concerned because Father had not yet been convicted. The assessor testified that the agency considers the significance of pending charges on a case-by-case basis, reviewing the parent's history, likelihood of the criminal case moving forward, the length of time that the parent has not been involved in criminal activity, and whether the charges resulted from an isolated incident. In this case, the assessor was not concerned regarding Father's pending domestic violence charge and testified that it would be up to the ongoing caseworker to determine whether it warranted disrupting the children's current placement with Father.

{¶25} The record indicates, however, that the caseworker ignored Father's involvement in the criminal justice system, even as it occurred during the course of the six-month hearing. On the third day of hearing, the caseworker did not mention that she knew that Father had recently been arrested and spent a day in jail, even when asked if she had any concerns regarding Father. In fact, the caseworker reiterated her support of an award of legal custody to Father based in significant part on his home study approval. It was not until the fourth day of hearing that the caseworker admitted that she had known of Father's arrest at the time of the prior hearing date. She again reiterated that she had no concerns regarding Father based on the results of his home assessment which was completed more than nine months earlier. The caseworker testified that she had no opinion regarding LCCS' finding Mother's involvement in domestic violence where children were involved (as witnesses) significant, while finding Father's charge for domestic violence against a pregnant woman not concerning.

{¶26} As to Father's other criminal issues, the caseworker testified that she was not aware of them. Specifically, she did not know that Father had violated the terms of his probation twice, resulting in both time in Community Based Correctional Facility and eight months in prison. The caseworker testified that it was up to the home study assessor to determine whether that information was important.

{¶27} Significantly, the caseworker testified that she has been trained to recognize the signs and characteristics of domestically violent relationships. She explained that domestic violence does not always manifest as physical violence, but could present as emotional or financial abuse, or as manipulative and controlling behaviors. The record is replete with evidence of Father's abusive and controlling behaviors relative to Mother.

{¶28} There is no dispute that the caseworker and guardian ad litem were aware that Father and his wife repeatedly and unilaterally modified Mother's visitation with the children, even resulting in the deprivation of many of Mother's visits. Father and his wife testified that they changed or canceled Mother's scheduled visits, often with very little notice, for their own benefit. On two occasions, Father canceled Mother's holiday visits so that the children could spend time with Father's family instead. Despite being told by both the magistrate and the caseworker not to modify or cancel Mother's visits, the problem continued.

{¶29} Father completely deprived Mother of her entitlement under the case plan to have phone calls with the children based on Father's interpretation of the order and belief that he did not have to allow telephone contact. Although the caseworker admitted that Father had a copy of the case plan detailing Mother's right to call the children, she testified that Father's denial of Mother's phone contact only constituted "controlling behavior" if Father was aware of the entitlement and prevented it. In this case, she did not recognize Father's deprivation of telephone visits as controlling or otherwise abusive, even though Father had earlier testified that he was seeking legal custody of both children because "last time we did this thing [referencing the 2016 dependency and neglect case involving A.W.], I got blown off on my visits."

{¶30} The agency declined to investigate Father's asserted motivation for legal custody, even though he had showed no interest in pursuing custody of A.W. in the prior case. In fact, Father had not had any contact with his son for years before the instant case. He failed to pay child support for A.W. throughout the child's life. Moreover, Father has no relationship with his two other children by different mothers and is thousands of dollars in arrears in his child support obligations regarding those children. Nevertheless, when questioned as to why the agency had no concerns regarding Father's abdication of his parenting responsibilities regarding his other

children, the caseworker testified that that was not important because those children were not subjects of this case.

{¶31} In addition, LCCS disregarded Father's abdication of parental duties even as to the children placed in his home. Both Father and his wife testified that Father has wife take the children to appointments and handle communications with Mother, including scheduling visitations. When asked what grade A.W. was in at school, Father testified that he had lost track of that. When asked what both children are addressing in counseling, Father testified that he could not remember because his schedule is hectic, and he is too tired to listen to his wife when she discusses the children with him.

{¶32} The evidence adduced at the hearing indicated numerous concerns regarding Father's parenting abilities. Accordingly, while the agency considered Mother's history a barrier to her regaining custody of the children, it ignored historical and current red flags relevant to Father's ability to provide a safe and stable home to meet the best interest of the children.

{¶33} Finally, the agency seemed to be consistently concerned with accommodating Father at Mother's expense, while holding Mother to a much higher standard of conduct. Mother was not allowed to bring family members to her visits because it made Father uncomfortable. Father, however, was allowed to bring his wife and her three children to Mother's visits because it was convenient for Father to do so and because Father wanted witnesses in case Mother behaved inappropriately. Despite Mother's complaints that the children were intimidated by Father's and his wife's stares and distracted by the wife's three children during visits, the caseworker testified only that she was concerned that Mother would watch Father and his wife during visits.

{¶34} It is clear from the record that Father's circumstances, attitudes, and behaviors raised concerns that required additional investigation to permit the juvenile court to determine

whether legal custody to Father, an intended permanent disposition for the children, was in the best interest of A.W. and J.V. By ignoring and failing to investigate issues regarding Father, in some cases similar issues upon which the agency relied to counsel against legal custody to Mother, LCCS deprived the juvenile court of the evidence necessary to determine the issue of the children's custody as of the conclusion of the hearing.

{¶35} In its judgment, the juvenile court expressly found that "Father's testimony lacks credibility * * *." Nevertheless, the trial court found that other witnesses like the guardian ad litem and caseworkers were credible in their testimony regarding why the court "should grant legal custody of the children to Father and not to Mother." It is important to recognize that the denial of one parent's motion for legal custody did not require the juvenile court to grant the other parent's motion for legal custody. The juvenile court was obligated to consider which type of custodial disposition was in the best interest of the children. If neither parent demonstrated the ability to provide a safe and stable home for the children, then the trial court could not reasonably grant either pending motion. While not necessary to deny both motions, it is significant that Mother had also filed an alternative motion for a six-month extension of temporary custody to allow additional time to comply with reunification efforts and demonstrate which custodial disposition would meet the best interest of the children.

{¶36} In this case, based on the previous discussion, this Court concludes that neither Father nor Mother met their respective burdens of proving that legal custody to either parent was in the best interest of A.W. and J.V. Mother does not argue that she met her burden of proof and the evidence adduced at the hearing supports the juvenile court's finding that Mother could not yet provide a safe and stable home for the children. Father also failed to meet his burden of proof. Given both his lack of credibility when denying concerns and failure to demonstrate good faith

compliance with case plan objectives, coupled with LCCS' need to continue to investigate unaddressed and new concerns, this Court concludes that this is the exceptional case where the trier of fact lost it way and created a manifest miscarriage of justice by awarding legal custody to Father. As the juvenile court's judgment is against the manifest weight of the evidence, the matter must be remanded for a further hearing on the issue of the children's custody.

III.

{¶37} Mother's sole assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
And cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
JENNIFER HENSAL
FOR THE COURT

TEODOSIO, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

LINDSAY K. NICKOLLS, Attorney at Law, for Appellant.

J.D. TOMLINSON, Prosecuting Attorney, and JENNIFER A. TOMECHKO, Assistant Prosecuting Attorney, for Appellee.

GENEVA CHADWICK, Attorney at Law, for Father W.

MICHAEL TOWNE, Attorney at Law, for Father V.

AMANDA BOWEN, Guardian ad Litem.