[Cite as *In re D.L.*, 2024-Ohio-809.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: D.L.

C.A. No.     30854

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 22 04 0382

DECISION AND JOURNAL ENTRY

Dated: March 6, 2024

SUTTON, Judge.

{¶1} Appellant, J.P. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her minor child in the legal custody of the child's maternal grandmother ("Grandmother"). This Court affirms.

I.

{¶2} Mother is the biological mother of D.L., born May 15, 2015. The child's father ("Father") did not appeal from the trial court's judgment.

{¶3} On April 14, 2022, Summit County Children Services Board ("CSB"), filed a complaint to allege that D.L. was an abused, neglected, and dependent child because of a history of substance abuse and domestic violence in the home. At that time, the two adults living in the home were Mother and her long-time partner, T.A.; and the alleged domestic violence was perpetrated by T.A. against Mother. The complaint further alleged that D.L. had been injured physically and emotionally during the ongoing incidents of domestic violence.

{¶4} With Mother's agreement, the juvenile court later adjudicated D.L. a dependent child. Following a dispositional hearing, the trial court placed D.L. in the temporary custody of CSB and adopted the case plan as an order of the court. Throughout this case, D.L. resided in the home of Grandmother and engaged in trauma therapy to address her past exposure to domestic violence. D.L. adjusted well to living in Grandmother's home.

{¶5} The case plan goals for Mother focused on her addressing her mental health, domestic violence, and substance abuse problems. Mother obtained a combined psychological and substance abuse assessment. The evaluator diagnosed Mother with post-traumatic stress disorder and cannabis use disorder, and further noted that Mother exhibited symptoms of bipolar disorder. Mother's assessment required her to complete a psychiatric evaluation, to further explore her symptoms of bipolar disorder, and to engage in intensive outpatient counseling to address her substance abuse and anger management problems. Mother did not obtain a psychiatric assessment and did not follow through with consistent counseling. She attended a few counseling sessions but was ultimately terminated from the agency for noncompliance. According to Mother's counselor, Mother made no progress toward achieving her counseling goals.

{¶6} Mother was also required to submit to random drug screens three to four times per month. During the following year, Mother submitted only four samples for drug testing, three of which tested positive for marijuana and either cocaine or fentanyl. Mother also failed to maintain contact with the caseworker.

{¶7} CSB eventually moved for D.L. to be placed in the legal custody of Grandmother. Mother had previously filed her own motion for legal custody or, alternately, a six-month extension of temporary custody. Following a hearing on the alternative dispositional motions, the magistrate decided that D.L. would be placed in the legal custody of Grandmother. The trial court

adopted the decision the same day, pending the filing of timely objections. Mother filed objections to the magistrate's decision, raising the same challenges that she now raises on appeal. The trial court overruled her objections and placed D.L. in the legal custody of Grandmother. Mother appeals and raises three assignments of error.

## II.

### **ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT IT WAS IN THE CHILD'S BEST INTEREST TO BE PLACED IN THE LEGAL CUSTODY OF [GRANDMOTHER] AS THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶8} The first assignment of error is that the trial court erred in placing D.L. in the legal custody of Grandmother. Mother implicitly argues that the trial court should have instead returned the child to her legal custody. Although she asserts that CSB failed to present clear and convincing evidence to support its motion, that is not the appropriate evidentiary standard. On appeal, an award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence.

> Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. In other words, when the best interest of the child is established by the greater weight of the evidence, the trial court does not have discretion to enter a judgment that is adverse to that interest. Thus, our standard of review is whether a legal custody decision is against the manifest weight of the evidence.

(Internal citations and quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7. Moreover, as a party moving for the child to be returned to her legal custody, Mother had her own burden of proving by a preponderance of the evidence that placement of the child in her legal custody was in the child's best interest. *In re A.W.*, 9th Dist. Lorain No.

20CA011671, 2021-Ohio-2975, ¶ 17, citing *In re T.R.*, 9th Dist. Summit Nos. 25179 and 25213, 2010-Ohio-2431, ¶ 27.

{¶9} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶10} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. No specific test or set of criteria is set forth by statute regarding an award of legal custody, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23.

{¶11} "[T]he primary focus at the legal custody hearing was on the current parenting ability of each potential custodian and whether it was in the best interest of the child[] to be permanently placed in the legal custody of [either] of them." *In re K.C.*, 9th Dist. Summit Nos. 26992 and 26993, 2014-Ohio-372, ¶ 20. The juvenile court is guided by the best interest factors enumerated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the

custodial history of the child, and the child's need for permanence. R.C. 2151.414(D)(1)(a)-(d); *see also In re B.C.*, 9th Dist. Summit Nos. 26976 and 26977, 2014-Ohio-2748, ¶ 16. R.C. 2151.414(D)(1)(e) also requires the trial court to consider whether any of the factors set forth in R.C. 2151.414(E)(7)-(11) apply to this case, but those factors are not relevant here.

{¶12} The juvenile court may also apply the best interest factors in R.C. 3109.04(F)(1). *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850 and 15CA010860, 2017-Ohio-1, ¶ 17. While many factors overlap with those set forth in R.C. 2151.414(D)(1), separate factors that are relevant in this case are the child's adjustment to their "home, school, and community[]" and the proposed custodian's likelihood to honor and facilitate visitation or parenting time. R.C. 3109.04(F)(1)(d),(f).

{¶13} Beginning with the child's interaction with each potential caregiver and her expressed wishes, Mother emphasizes evidence that D.L. interacted well with her during visits and that D.L. wanted to maintain a relationship with Mother. This Court recognizes that Mother's fundamental parental rights are at issue in this case, but must emphasize that the trial court's judgment granting legal custody to Grandmother was not akin to a termination of Mother's parental rights, as it does preserve the family relationship between Mother and D.L. *In re L.S.*, 9th Dist. Lorain No. 21CA011770, 2022-Ohio-3281, ¶ 10. The juvenile court's disposition of legal custody "is a less drastic disposition than permanent custody" because Mother retains her "residual parental rights, privileges, and responsibilities." *Id.*; R.C. 2151.011(B)(21). Those rights include, "but [are] not necessarily limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support." R.C. 2151.011(B)(50).

{¶14} Mother's burden on appeal is to demonstrate that these two best interest factors (the interaction between Mother and D.L. and the child's wishes) supported returning D.L. to her legal custody rather than placing the child in the legal custody of Grandmother. At the hearing, the trial court heard substantial evidence that, although Mother and D.L. got along well in a supervised setting, Mother was never permitted to have more frequent or unsupervised visits with D.L. because she had not complied with the reunification requirements of the case plan.

{¶15} Moreover, although D.L. had expressed a desire to continue to see Mother, she had informed the caseworker that she wanted to stay in Grandmother's home because she felt safe there. The guardian ad litem testified that D.L. was comfortable in Grandmother's home and that it was in her best interest to remain there.

{¶16} D.L. had been living in a temporary placement for one year and needed a legally secure permanent placement. Grandmother was fully prepared to provide her with a permanent home. Both the caseworker and the guardian ad litem agreed that Grandmother's home was appropriate for D.L., the child was doing well there, and they supported placing the child in Grandmother's legal custody.

{¶17} Mother points to a few facts mentioned at the hearing to support her argument that Grandmother did not provide D.L. with an appropriate home: Grandmother supplements her disability income with part-time employment; Grandmother sometimes takes D.L. to work with her; and Grandmother has a boyfriend who has not been investigated by CSB. These facts were not developed in any detail at the hearing and Mother has failed to demonstrate that this evidence undermined the trial court's determination that Grandmother was providing D.L. with an appropriate home.

{¶18} Grandmother had been driving occasional delivery runs for Door Dash to supplement her income. In response to one question, Grandmother admitted that she sometimes took seven-year-old D.L. in the car with her when she made deliveries. No further questions about D.L. riding with her were asked. Notably, there was no evidence presented about how often Grandmother did this or that D.L. riding with Grandmother disrupted her sleep, school, and/or homework schedules or that it otherwise posed any risk to her safety or wellbeing.

{¶19} Similarly, the trial court heard minimal testimony about Grandmother's boyfriend at the hearing. Although Mother asserts in her appellate brief that the boyfriend was "a prevalent participant" in D.L.'s life, no such evidence was presented at the hearing. To support her assertion that Grandmother's boyfriend had frequent contact with D.L., Mother relies solely on the caseworker's answer to the magistrate's question, "What about a boyfriend of [Grandmother]?" The caseworker responded only that Grandmother had "mentioned" a boyfriend, he did not live in Grandmother's home, the caseworker had never met him, and CSB had not investigated him because no one, including the child and Mother, had expressed any concerns about him.

{¶20} The caseworker further testified that she had no concerns that Grandmother "would allow someone that's unsafe to be around [D.L.]" Mother's trial counsel could have further questioned the caseworker about Grandmother's boyfriend but did not. Moreover, when Grandmother testified at the hearing, no one questioned her about her boyfriend. There is nothing in the record to explain how long Grandmother had known this man; how often she saw him; or how much time, if any, that D.L. had spent with the man.

{¶21} The record does not support Mother's assertions that these undeveloped facts undermined Grandmother's ability to provide appropriate care for D.L. The caseworker and the guardian ad litem both testified that they had no concerns about D.L.'s safety and wellbeing in

Grandmother's care and that they believed that placing D.L. in Grandmother's legal custody was in the child's best interest.

{¶22} On the other hand, Mother supported her legal custody motion only with her own testimony at the hearing. Several months earlier, she had waived her right to a contested hearing and agreed to the adjudication of D.L. as a dependent child. At the final hearing, however, Mother blamed the removal of D.L. from her custody on CSB "harassing" her and punishing her when she had done nothing wrong. Regarding her progress toward reunification, Mother testified that she had secured housing and was trying to comply with the requirements of the case plan. She admitted that, nearly one year after the case plan was adopted, she had not yet engaged in consistent substance abuse or mental health counseling. Mother explained that she had scheduled an appointment at a different mental health agency and planned to start engaging in counseling there. She testified that she wanted an extension of temporary custody and a new caseworker so she could "start off fresh and really do the case plan[.]" Through her own testimony, Mother essentially conceded that she had not made substantial progress on the case plan and was not prepared to provide D.L. with a stable home at that time.

{¶23} Finally, Mother emphasizes that she and Grandmother have a contentious relationship and suggests that Grandmother will not facilitate an ongoing relationship between Mother and D.L. Grandmother admitted at the hearing that she and Mother have a poor relationship, which was why she had requested during this case that Mother's visits with D.L. be supervised by someone else. Grandmother testified that she wanted D.L. and Mother to maintain a positive relationship and would respect Mother's ongoing residual parental rights, as she had done throughout this case. Both the caseworker and the guardian ad litem opined that Grandmother

would continue to facilitate Mother's right to regularly visit with D.L. Grandmother testified that she was willing to help pay for the visits to be supervised at a private agency.

{¶24} Given the evidence presented at the hearing, Mother has failed to demonstrate that the trial court lost its way by concluding that legal custody of D.L. to Grandmother was in the child's best interest. *See Eastley* at ¶ 20. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED [ITS] DISCRETION WHEN IT DENIED MOTHER'S MOTION FOR [A] FIRST SIX-MONTH EXTENSION.

{¶25} Mother's second assignment of error is that the trial court abused its discretion by failing to grant a first six-month extension of temporary custody. R.C. 2151.415(D)(1) authorizes the trial court to grant a first extension of temporary custody if it finds, by clear and convincing evidence, that:

the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension.

{¶26} Through the disposition of Mother's first assignment of error, this Court overruled her challenge to the evidence supporting the trial court's determination about D.L.'s best interest. Because the trial court found that a permanent disposition of legal custody to Grandmother was in the best interest of D.L., an extension of temporary custody was not. *See In re J.M.*, 9th Dist. Summit No. 30258, 2022-Ohio-3638, ¶ 32.

{¶27} Moreover, there was not clear and convincing evidence presented at the hearing that Mother had made "significant progress on the case plan of the child." In fact, as explained above, the evidence was not disputed that Mother had not begun to consistently address her mental health or substance abuse problems, which were primary reunification requirements of the case

plan. For that reason, the trial court concluded that Mother had not made significant case plan progress, which was required for an extension of temporary custody. Mother's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHEN IT FAILED TO FIND THAT THE AGENCY DID NOT PROVIDE REASONABLE REUNIFICATION EFFORTS.

{¶28} Finally, Mother challenges the trial court's finding that CSB proved that it "made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." R.C. 2151.419(A)(1). Mother does not dispute that CSB made referrals to service providers for Mother and even scheduled some appointments for her. Mother, however, failed to follow through with those services on a consistent basis. On the day of the hearing, Mother testified that she had scheduled an appointment with a different mental health service provider and planned to start engaging in services there. The evidence before the trial court demonstrated that Mother's failure to make progress on the case plan was the result of her own inaction, not a lack of reasonable efforts by CSB. *See In re Z.K.*, 9th Dist. Summit Nos. 30478, 30479, and 30480, 2023-Ohio-2150, ¶ 31.

{¶29} The only lack of reunification efforts that Mother alleges on appeal is that the caseworker failed to maintain contact with her to keep her informed about the wellbeing of D.L. Mother points to one isolated statement made during the caseworker's testimony that she had not been in contact with Mother for the past several months. This Court must consider the caseworker's statement within the context of her full testimony. The caseworker further testified that she attempted to contact Mother numerous times during that period but had been unable to

reach her. The caseworker explained that Mother did not respond to her email messages, did not appear for their scheduled appointments or home visits, and she kept changing phone numbers and did not keep the caseworker apprised of her current number. This evidence fails to demonstrate a lack of reasonable reunification efforts by CSB. Mother's third assignment of error is overruled.

## III.

{¶30} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
FLAGG LANZINGER, J.
CONCUR.


APPEARANCES:

JASON D. WALLACE, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and MARRETT W. HANNA, Assistant Prosecuting Attorney, for Appellee.

JAMES K. REED, Attorney at Law, for Appellee.

BETH BLACKMORE, Attorney at Law, for Appellee.

SALLY PRENTICE, Guardian ad Litem.