[Cite as *In re L.S.*, 2022-Ohio-3281.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

IN RE: L.S.

C.A. No.     21CA011770


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.     19JC58169

DECISION AND JOURNAL ENTRY

Dated: September 19, 2022

CALLAHAN, Judge.

{¶1}    Appellant, F.S. ("Mother"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that placed her minor child in the legal custody of the paternal grandfather and step-grandmother ("Grandparents").  This Court affirms.

I.

{¶2}    Mother is the biological mother of L.S., born January 18, 2019.  Mother resided with the child's father ("Father") throughout this case.  Father participated in the trial court proceedings but did not appeal from the trial court's judgment.  Because only Mother has appealed, this Court will focus its review of the evidence on the facts pertaining to her.

{¶3}    Lorain County Children Services ("LCCS") initially worked with the family pursuant to a voluntary safety plan, which involved the child living in the home of Grandparents and Mother working on reunification services.  Because Mother did not regularly visit the child or engage in services under the voluntary plan, LCCS filed this involuntary case on October 8, 2019.

The complaint alleged that L.S. was a neglected and dependent child because the child had been diagnosed with failure to thrive and the parents were failing to follow the pediatrician's advice about feeding the child. The complaint also alleged that Mother was failing to meet the child's other basic needs, and the agency was concerned about her unstable mental health.

{¶4} The trial court later adjudicated L.S. a neglected and dependent child and placed the child in the temporary custody of Grandparents under an order of protective supervision by LCCS. During the next several months, Mother engaged in mental health treatment but did not regularly attend parenting classes. Moreover, LCCS remained concerned that Mother admitted that she continued to struggle to do normal daily activities such as getting up, doing housework, and/or making meals. Mother, who was not employed, slept most days until 11:00 a.m. or later. She also failed to visit L.S. regularly and did not demonstrate that she could appropriately care for L.S. without supervision.

{¶5} Because L.S. was thriving in the home of Grandparents and they had expressed a desire to provide the child with a permanent home, LCCS eventually moved to have L.S. placed in their legal custody. Following a hearing before a magistrate, L.S. was placed in the legal custody of Grandparents. The trial court adopted the magistrate's decision the same day, pending the filing of timely objections.

{¶6} Mother objected to the magistrate's decision, asserting that the legal custody judgment was not supported by the evidence and that the visitation order was unreasonable. The trial court overruled Mother's objections and placed L.S. in the legal custody of Grandparents under the same order for supervised visits every week as agreed by the parties or, if they "cannot agree on the dates and times, the parents shall at least have visitation with the child on Saturdays

from 12:00 p.m. to 3:00 p.m. at the legal custodians' residence." Mother appeals and raises three assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT FOUND THAT AN AWARD OF LEGAL CUSTODY OF [L.S.] TO [GRANDPARENTS] IS IN HER BEST INTERESTS, SAID FINDING BEING CONTRARY TO THE WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL BEFORE THE MAGISTRATE.

{¶7} Mother's first assignment of error challenges the weight of the evidence supporting the legal custody decision. Mother asserts that the trial court should have granted an extension of temporary custody rather than place the child in the legal custody of Grandparents.

{¶8} An award of legal custody must be supported by a preponderance of the evidence. "Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value." (Internal quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7.

{¶9} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal citations and quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21. "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H*., 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. This Court

has repeatedly held that, if legal custody is in child's best interest, an extension of temporary custody necessarily is not. *See*, *e.g.*, *In re C.M.*, 9th Dist. Summit No. 24380, 2009-Ohio-943, ¶ 24.

{¶10} This Court recognizes that Mother's fundamental right to raise her child is at issue in this case but must emphasize that the trial court's judgment granting legal custody to Grandparents was not akin to a termination of Mother's parental rights. *In re A.L.*, 9th Dist. Summit No. 28400, 2017-Ohio-7689, ¶ 18. The juvenile court's disposition of legal custody "is a less drastic disposition than permanent custody" because Mother retains her "residual parental rights, privileges, and responsibilities." *Id.*; R.C. 2151.011(B)(21). Those include, "but [are] not necessarily limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support." R.C. 2151.011(B)(50).

{¶11} The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. The juvenile court is guided by the best interest factors enumerated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child,

and the child's need for permanence.  R.C. 2151.414(D)(1)(a)-(e)[1]; *see also In re B.C.*, 9th Dist. Summit Nos. 26976 and 26977, 2014-Ohio-2748, ¶ 16.

{¶12}  The juvenile court may also consider the best interest factors in R.C. 3109.04(F)(1). *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850 and 15CA010860, 2017-Ohio-1, ¶ 17.  While many factors overlap with those set forth in R.C. 2151.414(D)(1), a separate factor relevant here is the proposed custodian's likelihood to honor and facilitate visitation or parenting time.  R.C. 3109.04(F)(1)(f).

{¶13}  Throughout this case, the interaction between Mother and L.S. was limited to supervised visitation because Mother had failed to demonstrate that she could appropriately care for L.S. without supervision by another adult.  Visits occurred in Grandparents' home on a schedule as agreed by the parties, partly because health restrictions during the COVID pandemic prevented frequent in-person visits elsewhere.

{¶14}  While L.S. was placed in Grandparents' temporary custody, the trial court had ordered visits to take place "as agreed" by the parties and Mother never objected to that arrangement.  Grandparents initially agreed to the parents visiting three times per week, but they rarely came more than once a week.  After about two months, upon Mother's request, the visitation schedule was changed to once a week, but Mother still did not come regularly.  She also did not call Grandparents to warn them when she did not come for scheduled visits.  During the nine months prior to the hearing, Mother visited L.S. approximately 27 times.

{¶15}  Mother was employed for one month of this case but was terminated for missing too many shifts.  For the remainder of the case, Mother was not employed and offered no

---

[1] R.C. 2151.414(D)(1)(e) also requires the trial court to consider whether any of the factors set forth in R.C. 2151.414(E)(7)-(11) apply to this case, but none of those factors are relevant here.

explanation for why she did not regularly visit L.S. except that the visits conflicted with Father's work schedule, and she did not like to visit without Father. Grandmother testified, however, that the parties had arranged visits around Father's work schedule.

{¶16} At the hearing, Mother's counsel attempted to demonstrate that Mother had a poor relationship with Grandparents and did not want to visit at their home, but the evidence did not support that explanation for Mother missing visits. Mother did not testify at the hearing, and other witnesses testified that Mother never told them that she did not want to visit at Grandparents' home. Grandmother testified that she thought she had a good relationship with Mother, that they had been on friendly terms before and during this case, and that she had made every effort to facilitate visitation. Moreover, the evidence demonstrated that during the COVID pandemic, Mother had more opportunities for in-person visits at Grandparents' home than in a public place.

{¶17} When Mother did visit L.S., there was little interaction between them. The caseworker and guardian ad litem, who each observed several visits between Mother and L.S., opined that they saw no real parent-child bond. The caseworker described their relationship as "very distant." The guardian ad litem testified that Mother's relationship with L.S. did not improve throughout the 15 months that this case was pending.

{¶18} The evidence further demonstrated that Mother was required to bring diapers, snacks, and other supplies to the visits, but rarely did so. Trial counsel attempted to trivialize this shortcoming by emphasizing that Grandparents already had the necessary diapers, wipes, and food in their home. The caseworker explained, however, that this is a standard case plan requirement for children removed from the home, to enable parents to demonstrate that they can meet some of the child's basic needs before the agency allows them to progress to less supervision during visits.

{¶19} Moreover, LCCS continued to be concerned about Mother's reluctance to feed L.S. when she asked for snacks. Mother tended to limit the child's snacks, apparently because the family has a history of diabetes. Mother was repeatedly reminded that L.S. needed to gain weight, so Mother should generously feed her healthy snacks, but Mother continued to limit the child's snacks during visits. The caseworker and the guardian ad litem testified that Mother had not demonstrated an ability to care for L.S., even during visits, without supervision.

{¶20} The child's interaction with Grandparents, on the other hand, was consistent and positive. The caseworker and the guardian ad litem testified that L.S. was doing well in Grandparents' home, was comfortable there, and was closely bonded with both Grandparents. All the child's basic needs were being met and Grandparents were feeding L.S. as directed by the pediatrician. When L.S. came into their care, she weighed 13 pounds, and her weight was in the eighth percentile for children her age. By the time of the hearing, L.S. had been steadily gaining weight and was in the 47th percentile for weight on the growth chart. The evidence was not disputed that L.S was thriving in Grandparents' home.

{¶21} Because the hearing was held shortly before L.S. turned two years old, the guardian ad litem spoke on the child's behalf. She opined that legal custody to Grandparents was in the child's best interest. The guardian ad litem was bothered that, despite many months of parenting classes and counseling, Mother did not seem to understand why L.S. was removed from her custody. She opined that Mother did not understand how seriously underweight L.S. had been or that she had been partially responsible for that problem by limiting the child's food intake. The biggest concern of the guardian ad litem, however, was that Mother had visited L.S. so infrequently that she and L.S. barely knew each other and Mother had not demonstrated that she could meet the child's basic needs.

{¶22} L.S. had been living in the temporary custody of Grandparents for most of her short life and needed a legally secure permanent placement. Neither parent had demonstrated the ability to care for L.S. and meet her basic needs. Grandparents, on the other hand, had been providing L.S. with a safe and stable home for 15 months. Grandmother testified that they were willing and able to care for L.S. until she is an adult and that she and Grandfather were prepared to meet the other requirements of assuming legal custody.

{¶23} Finally, the evidence demonstrated that Grandparents were likely to facilitate visitation between L.S. and Mother, as they had throughout this case. Although Mother alludes to a strained relationship with Grandparents, the only evidence presented at the hearing was that Grandparents granted Mother liberal visitation, but she failed to avail herself of the opportunity to frequently visit her child.

{¶24} Given the evidence presented at the legal custody hearing, the trial court did not lose its way by determining that it was in the best interest of L.S. to be placed in the legal custody of Grandparents. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN FINDING THAT [LCCS] MADE REASONABLE [REUNIFICATION] EFFORTS.

{¶25} Mother's second assignment of error challenges the trial court's adoption of the magistrate's finding that LCCS made reasonable efforts in this case to reunite L.S. with her parents. To preserve this issue for appellate review, however, Mother was required to comply with Juv.R. 40(D). Juv.R. 40(D)(3)(b)(iv) provides, in relevant part, that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." Although Mother filed timely objections to the magistrate's legal custody decision,

she did not object to the finding that LCCS had made reasonable reunification efforts. On appeal, she does not argue or demonstrate that the reasonable efforts finding constituted plain error.

{¶26} Because Mother has failed to comply with the requirements of Juv.R. 40(D)(3)(b)(iv), this Court will not address the merits of her second assignment of error. Moreover, LCCS presented evidence that it provided Mother with reunification services, but she failed to engage in any of those services. The record demonstrates that Mother was not reunified with her child because she moved out of state, did not maintain contact with the agency or her child, and did not work on the reunification goals of the case plan.

## ASSIGNMENT OF ERROR III

> THE TRIAL COURT ERRED WHEN IT [ORDERED] THAT MOTHER ONLY BE AWARDED LIMITED SUPERVISED VISITATION WITH [L.S.] AND [BY] FAILING TO ENSURE THAT MOTHER IS AFFORDED RIGHTS OF RECORDS ACCESS PURSUANT TO [R.C.] 3109.051.

{¶27} Mother's third assignment of error challenges the trial court's judgment insofar as it ordered supervised visitation as agreed by the parties and it failed to grant her rights to access her child's records. Although Mother raised the visitation challenge in her objections to the magistrate's decision, she failed to argue that she was not granted access to the child's records. Mother also failed to make a plain error argument on appeal. As explained in this Court's disposition of Mother's second assignment of error, she has failed to comply with the requirements of Juv.R. 40(D)(3)(b)(iv), so her denial of records access argument will not be addressed.

{¶28} This Court confines it review of this assignment of error to the issue that Mother did preserve for appellate review: the visitation order. The juvenile court has broad discretion in determining an award of parental visitation, and this Court will not reverse that award unless the juvenile court has abused its discretion. *In re K.D.*, 9th Dist. Summit No. 28459, 2017-Ohio-

4161, ¶ 26. A trial court does not abuse its discretion unless its judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶29} Relying on statutory and case law pertaining to custody disputes between presumptively fit parents, Mother asserts that the trial court erred by imposing constraints on her "right" to visit L.S. Mother no longer has an unqualified "right" to visit her child. Because L.S. was adjudicated a neglected and dependent child, Mother was implicitly deemed to be an unsuitable parent. *See In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 22. When L.S. was placed in the legal custody of Grandparents, Mother retained "residual" parental rights, privileges, and responsibilities, which include "the *privilege* of reasonable visitation[.]" (Emphasis added.) R.C. 2151.353(A)(3)(c). *See also* R.C. 2151.011(B)(50).

{¶30} Under R.C. 2151.359(A)(1)(a), the trial court explicitly retained the authority to "[c]ontrol any [parental] conduct or relationship that will be detrimental or harmful to the child[,]" which includes the authority to limit or even prohibit parental visitation with a child placed in the legal custody of another adult. *See In re M.B.*, 9th Dist. Lorain Nos. 11CA010060 and 11CA010062, 2012-Ohio-5428, ¶ 34. In determining the appropriate visitation for a parent who has lost legal custody of the child, the trial court must consider the totality of circumstances affecting the best interest of the child. *In re K.D.*, 2017-Ohio-4161, at ¶ 27.

{¶31} Mother argues that the trial court's visitation order was improper for three reasons: the requirement that visits be supervised; the time schedule (as agreed by the parties); and the location (Grandparents' home). This Court will address each argument in turn.

{¶32} Mother first asserts the trial court erred by ordering that her visits with L.S. be supervised. Mother's visits with L.S. had been supervised throughout this case because Mother did not have a close bond with L.S. and had failed to demonstrate that she could meet the child's

basic needs without supervision. The guardian ad litem opined that visits should remain supervised until Mother demonstrated more of a bond with the child and the ability to care for her independently. Considering the totality of circumstances surrounding Mother's relationship with L.S., the trial court did not act unreasonably in ordering that visits continue to be supervised. Moreover, the trial court further ordered that visitation could be expanded with the agreement of Grandparents or by a further order of the trial court.

{¶33} The trial court also ordered that the visitation schedule would be as agreed by the parties, just as visitation had been ordered throughout this case. That order gave the parties the flexibility to adapt to changing schedules and had proved to be workable throughout this case. Evidence about Grandparents' past behavior, as well as the testimony of Grandmother, demonstrated that Grandparents had never withheld or prevented visitation but were willing to provide Mother with liberal opportunities to visit L.S. Grandparents initially allowed Mother to come three times a week, but she rarely came more than once a week. When Mother requested a change in the visitation schedule in the past, Grandparents complied with her request. Mother argues that this schedule is unworkable because the parties may not be able to agree on a schedule in the future. The visitation order contemplates such a problem, however, and explicitly provides that if the parties "cannot agree on the dates and times, the parents shall at least have visitation with the child on Saturdays from 12:00 p.m. to 3:00 p.m. at the legal custodians' residence."

{¶34} Mother further asserts that visitation at Grandparents' home with Grandparents supervising is not appropriate because Grandparents do not facilitate interaction between Mother and L.S. There is no evidence in the record to support Mother's argument. The undisputed evidence before the trial court was that Grandparents tried to encourage interaction between L.S. and Mother, but L.S. was reluctant to interact with Mother. The only complaint raised by Mother

during the trial court proceedings was that the television was often on at Grandparents' home, which distracted L.S. After Mother raised that concern, Grandparents made sure that the television was not on during visits.

{¶35} Mother has failed to demonstrate that the trial court abused its discretion in its visitation order. Mother's third assignment of error as it pertains to the visitation order is overruled. The remainder of Mother's assignment of error was not addressed.

### III.

{¶36} Mother's first and third assignments of error are overruled, insofar as they raised issues that were preserved for appellate review under Juv.R. 40(D)(3)(b)(iv). Mother's second assignment of error and part of her third assignment of error were not addressed on the merits. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
CARR, J.
CONCUR.

APPEARANCES:

LORIE K. BROBST, Attorney at Law, for Appellant.

J.D. TOMLINSON, Prosecuting Attorney, and COLTON D. ORR, Assistant Prosecuting Attorney, for Appellee.

KERI FOSTER, Guardian ad Litem.

ERNEST and RHONDA SPEER, Legal Custodians.