[Cite as *In re L.S.*, 2023-Ohio-2148.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: LU.S.
    A.S.
    LI.S.

C.A. No.    30352

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 14-01-000036
               DN 14-01-000037
               DN 14-01-000038

DECISION AND JOURNAL ENTRY

Dated: June 28, 2023

FLAGG LANZINGER, Judge

**{¶1}** Defendant-Appellant Steven Smolinski (Father), appeals from the judgment of the Summit County Juvenile Court, modifying Jaclyn Smolinski's (Mother) visitation. Plaintiff-Cross-Appellant, appeals from the judgment of the Summit County Juvenile Court, denying her visitation to her son L.S. For the reasons that follow, this Court affirms.

I.

**{¶2}** Father and Mother have three children, L.S., A.S., and Li.S. In 2014, a complaint was filed by Children Services with the Summit County Juvenile Court. One of L.S.'s nurses suspected Mother was overmedicating L.S. L.S. was adjudicated neglected and dependent. A.S. and Li.S were adjudicated dependent. Father was awarded sole custody of the children. Mother was awarded supervised visitation with A.S. and Li.S., but no visitation to L.S.

**{¶3}** A.S. and Li.S. suffer from no significant physical or mental difficulties. L.S. suffers from multiple conditions including cognitive disabilities, a swallowing disorder, and a seizure disorder. As a result of his conditions, L.S. requires significant oversight and care.

**{¶4}** Since 2014, Mother has sought modification of visitation with the children on multiple occasions. In September 2021, a hearing was held regarding Mother's motions for modification of visitation. At the time of the hearing, Mother had supervised visitation with A.S. and Li.S. and no visitation with L.S.

**{¶5}** During the hearing, much of the testimony focused on Mother's mental health and the issues surrounding it. Mother's therapist testified that Mother was active in mental health treatment from 2014 until 2019. Mother completed her treatment goals. The therapist testified that Mother had "taken responsibility at all times for [Mother's] actions regarding her family."

**{¶6}** During the hearing, testimony from the director of Common Ground and the Guardian ad Litem established that Mother interacted positively with A.S. and Li.S. during supervised visits. The Guardian ad Litem recommended unsupervised visitation with A.S. and Li.S. because of the Children's ages and Mother's appropriateness during supervised visits. During in camera interviews, A.S. and Li.S. indicated they wished for visits with Mother to be unsupervised. Neither wished to visit with Mother overnight.

**{¶7}** During the hearing, the Guardian ad Litem testified regarding visitation for L.S.

> [I]f it could be worked out with an aide in a safe place, I am not against [Mother] seeing him with witnesses and aides in place. I am just not affirmatively requesting the Court to force [Father] to have visits with [L.S.], but I am not against it if the Court wants to do it in a safe manner either.

**{¶8}** Because of his cognitive abilities, L.S. could not express his wishes.

{¶9} On November 3, 2021, the juvenile court adopted the magistrate's decision which granted Mother unsupervised visitation with A.S. and Li.S. It denied Mother's motion for visitation with L.S. Father has appealed raising two assignments of error for our review. Mother cross appeals the denial of visitation with L.S. raising one assignment of error for our review.

II.

## FATHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN MODIFYING MOTHER'S VISITATION IN
THIS MATTER, WITHOUT FINDING AN APPROPRIATE CHANGE IN
CIRCUMSTANCES.

{¶10} In his first assignment of error, Father argues that the juvenile court erred in modifying visitation for A.S. and Li.S. even though the court did not make a finding of a change of circumstances. Father further argues that because no finding of change of circumstances occurred, the court should not have discussed the best interest factors of R.C. 2151.414(D) and R.C. 3109.04(F). Father's argument fails because there is no requirement to show that a change of circumstances has occurred to modify visitation.

{¶11} When ruling on a motion to modify visitation, a trial court must determine if the modification is in the child's best interest. *Braatz v. Braatz*, 85 Ohio St.3d 40, paragraph two of the syllabus. "[A] trial court is required to consider the fifteen enumerated factors in R.C. 3109.051(D), and then the court has sound discretion to determine a visitation plan that is in the best interest of the child." *Given v. Sanzone*, 9th Dist. Summit No. 20264, 2001 WL 833396, *6 (July 25, 2001), citing *Braatz* at paragraph two of the syllabus.

{¶12} Absent an abuse of that discretion, this court will not reverse the trial court's decision. *In re L.S.*, 9th Dist. Lorain No. 21CAA011770, 2022-Ohio-3281, ¶ 28. More than an error in law or judgment, an abuse of discretion implies that the trial court's decision is

unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When reviewing a ruling for an abuse of discretion, this Court is precluded from substituting our judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶13} In considering the motions before it, the juvenile court was guided by best interest factors listed in R.C. 2151.414 and R.C. 3109.051. In the magistrate's decision, which the juvenile court adopted as its own, the juvenile court noted that A.S. and Li.S. were 16 and 13 at the time of the order and up to that point had supervised contact with Mother for the eight previous years. The juvenile court noted testimony from Common Ground's director which indicated that they have had no concerns about Mother's communications with A.S. and Li.S. Additionally, as the order stated, "[b]oth of these teens were clear to both their guardian ad litem and the magistrate that they wish to visit their mother without supervision."

{¶14} The juvenile court considered Mother's mental health, noting that "Mother's mental health was the central subject throughout the cases, and continues to be." Mother's therapist testified that the mother had "engaged in dialectical and cognitive behavioral therapy from 2014 until discharged in 2019 with all treatment goals met." In considering the testimony regarding Mother's mental health, the juvenile court also considered the concerns of Father. As the court noted within its order, "Father's total dismissal of [M]other's therapeutic progress seemed almost vindictive, giving his testimony less weight than it might otherwise have had."

{¶15} The juvenile court also considered the interactions between the parents, noting, "Both parents made cross-allegations against the other of actions that had caused them harm." Regardless of these cross-allegations, "both parents have been able to cooperate with one another for their children's sake."

{¶16} In addition to these various considerations, the juvenile court examined the recommendations of the guardian ad litem. The court noted the guardian's recommendation "that [Li.S.] and [A.S.] have a few hours of unsupervised visits with their mother, and that the [M]other's visits should not conflict with the teens attending their extracurricular activities."

{¶17} The juvenile court concluded its order with a summation which noted the ages of the teenagers and their advancing maturity.

> [I]t is in [A.S.]'s and [Li.S.]'s best interests to start to develop their judgment about their relationships with their mother in limited unsupervised visits while they still have the benefits of being minors, including: their father's oversight; the continuing involv[e]ment of Common Ground; their schools' reporting responsibilities; Children Services' investigative responsibilities; the availability of a guardian ad litem; and the continuing jurisdiction of the Court.

{¶18} The juvenile court's justifications for modifying visitation were particularized within its order. After considering the enumerated factors in R.C. 2151.414 and R.C. 3109.051, the juvenile court had sound discretion to determine the visitation plan for A.S. and Li.S. The juvenile court's decision regarding visitation was not unreasonable, arbitrary, or unconscionable. Thus, the trial court did not abuse its discretion in modifying the children's visitation with Mother.

{¶19} Father has not supported his claim that the juvenile court's modification of Mother's visitation was an abuse of the juvenile court's discretion. Father's first assignment of error is overruled.

### FATHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT'S JUDGMENT EXPANDING MOTHER'S VISITATION
IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶20} In his second assignment or error, Father argues that the juvenile court's expansion of mother's visitation is against the manifest weight of the evidence. He argues it is against the manifest weight of the evidence because (1) Mother has not sought treatment for Munchausen's

Syndrome by Proxy and (2) because the juvenile court's order grants Mother's motion for unsupervised visitation without imposing a schedule. We disagree.

{¶21} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001). When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21.

{¶22} In a previous appeal for this case, unrelated to the appeal at hand, this Court addressed the issue of Mother's alleged Munchausen Syndrome by Proxy. As noted by this Court then, allegations regarding Munchausen Syndrome by Proxy were stricken from CSB's complaint by agreement of the parties. There is no diagnosis of Mother having Munchausen Syndrome by Proxy by a psychiatrist, on the record.

{¶23} In its order, the juvenile court noted that Mother's therapist did testify that Mother exhibited similar traits of personality disorders and that her treatment sessions were modified accordingly. In addition, Mother's therapist testified that Mother completed mental health treatment in 2019. She later resumed mental health treatment to address issues relating to the death of two of her students.

{¶24} The juvenile court reviewed testimony made by the Guardian ad Litem and staff from Common Ground regarding Mother's appropriateness during supervised visits. The

testimony indicated that Mother was cooperative, polite, and calm and that her communications with [Li.S.] and [A.S.] were always open and appropriate.

**{¶25}** The various evidence reviewed by the juvenile court, prior to its decision to grant Mother visitation to A.S. and Li.S., does not support the claim that the juvenile court clearly lost its way and created such a manifest miscarriage of justice that its judgment must be reversed.

**{¶26}** Additionally, Father argues that a lack of specific schedule for visitation is against the manifest weight of the evidence. At the time visitation was modified, a specific schedule for Mother's visitation already existed. The juvenile court's modification of visitation changed only Mother's visitation from supervised visitation to unsupervised visitation. The record indicates that the juvenile court did consider the possibility of changing visitation to overnight or changing visitation to longer periods of time. Ultimately, those possible changes were not ordered. The only change to visitation was the type of visitation permitted. As a result, there was no need to update the visitation schedule. The failure to provide an updated schedule within the juvenile court's order was not an error.

**{¶27}** After weighing the evidence and all reasonable inferences of this case and considering the credibility of witnesses, we do not conclude that the juvenile court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. Father's second assignment of error is overruled.

### MOTHER'S CROSS-APPEAL ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLEE/CROSS-APPELLANT MOTHER'S MOTION FOR SUPERVISED VISITATION WITH [L.S]. AND INSTEAD LEAVING HER VISITATION RIGHTS UP TO APPELLANT/CROSS-APPELLEE FATHER

**{¶28}** In her sole assignment of error, Mother argues that the juvenile court abused its discretion when it denied her motion for supervised visitation with L.S. and left the opportunity

for visitation to Father's discretion. She argues that there is no evidence indicating that L.S. will be in danger if supervised visitation is allowed. She also argues that it was an abuse of discretion for the court to leave it to Father's discretion to facilitate visitation between Mother and L.S. We disagree.

{¶29} As discussed earlier, abuse of discretion is more than an error in law or judgment. *Blakemore,* 5 Ohio St.3d at 219. It implies that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Id*. When reviewing a ruling for an abuse of discretion, this Court is precluded from substituting our judgment for that of the trial court. *Pons*, 66 Ohio St.3d at 621.

{¶30} The trial court has the "power to restrict the time and place of visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child." *Ward v. Wilson*, 5th Dist. Ashland Nos. 16-COA-025 and 16-COA-027, 2017-Ohio-579, ¶ 36, quoting *Anderson v. Anderson*, 147 Ohio App.3d 513, 2002-Ohio-1156, ¶ 18 (7th Dist.).

{¶31} At the time of Mother's 2021 motion, Mother had no visitation with L.S. Since 2014, Mother lost all custody and visitation rights because of substantiated claims that she intentionally overmedicated L.S., causing hospitalization and risk of death. The court denied Mother's 2021 motion for visitation. However, the court's order left open the opportunity for future visitation between L.S. and Mother, by permitting Father to facilitate that visitation at his discretion. Regardless of the potential for supervised visitation, the plain language of the court's order denied Mother's motion for supervised visitation with L.S.

{¶32} In making its decision, the juvenile court considered the best interest of L.S. The court noted that "based on the history of the case," the Guardian ad Litem, "was not affirmatively requesting such visitation." In its order, the court noted the Guardian ad Litem's testimony

explaining that "for visitation to occur, there must be a number of safety measures in place because of L.S.'s medical conditions." Finally, the court noted that "L.S. was unlikely to express his wishes as it relates to visitation based on his cognitive abilities."

{¶33} While many years have passed since the incidents which brought L.S. to the attention of the court, the unique history of this case and the special needs of L.S. were weighed by the court. The juvenile court did not abuse its discretion by considering these factors. For these reasons, the juvenile court order denying supervised visitation with L.S. is not unreasonable, arbitrary, or unconscionable.

{¶34} Mother's cross-appeal fails to establish that the trial court's decision was an abuse of discretion. Mother's sole assignment of error is overruled.

III.

{¶35} Father's first and second assignments of error are overruled. Mother's sole assignment of error is overruled. The judgment of the Summit County Juvenile Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

 Costs taxed equally to both parties.

_____
JILL FLAGG LANZINGER
FOR THE COURT

HENSAL, P. J.
STEVENSON, J.
CONCUR.


APPEARANCES:

LESLIE E. GRASKE, Attorney at Law, for Appellant/Cross-Appellee.

SHERRI BEVAN WALSH, Prosecuting Attorney, for Appellee.

MARK HERRON, Attorney at Law, for Appellee/Cross-Appellant.