[Cite as *In re B.H.*, 2021-Ohio-4152.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: B.H.
     J.H.

C.A. Nos.    29998
                29999

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.   DN 19 07 0615
             DN 19 07 0617

DECISION AND JOURNAL ENTRY

Dated: November 24, 2021

SUTTON, Judge.

**{¶1}** Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and awarded permanent custody of her children to Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

**{¶2}** Mother and Father are the biological parents of B.H. (d.o.b. 4/11/09) and J.H. (d.o.b. 2/2/14). They have another child together who is in the care of a third party and who is not involved in this case. During the course of the proceedings below, Mother gave birth to an infant who is the subject of another child welfare case. Father also has multiple other children, including C.H. who is the subject of a separate appeal and who was living in the same household with B.H. and J.H. when the three children were removed by CSB in this case.

{¶3}   Although the record is imprecise as to timing and circumstances, there is no dispute that B.H., J.H., and their half-brother C.H. had been formally placed in the legal custody of their paternal grandmother ("Grandmother") prior to CSB's involvement in this case.  In June 2019, the agency received a referral regarding the well-being of the children in Grandmother's home, where Father and the mother of C.H. had also been living.  When the agency caseworker visited the home to investigate, Father and C.H.'s mother had moved out because Grandmother had obtained a protection order against them.

{¶4}   During her investigation, the intake caseworker discovered the following.  Father and C.H's mother had been using methamphetamine in Grandmother's home and engaging in acts of domestic violence against her.  Father had multiple pending warrants for his arrest relating to drug charges in three cases.  Mother was in jail on drug charges.  Grandmother's home was cluttered, the children were dirty, and Grandmother admitted to feeling overwhelmed by caring for three children with special needs.  B.H. had leukemia, and although he was in remission, he still required multiple visits with health care professionals to monitor his situation.  C.H.'s services with Summit DD to address his issues and development due to Down Syndrome had been discontinued by that agency based on Grandmother's failure to ensure that child's participation.  Grandmother admitted that she too was using methamphetamine just to be able to get things done around the house.  Based on the conditions in the legal custodian's home, on July 23, 2019, CSB removed the children and filed complaints alleging that each was an abused (endangered), neglected, and dependent child.

{¶5}   As Mother had been released from jail the day before, the agency attempted to serve her personally with summons, the complaint, and notice of the adjudicatory hearing at her

last known address. When that was unsuccessful because Mother was no longer at that address and her current residence was unknown, the agency served her by publication.

{¶6} CSB filed its original case plan in early August 2019. The caseworker had scheduled a meeting with Mother prior to that, but Mother canceled it. During their conversation, Mother explained that she was alternating her time between two residences in Akron, with plans to move in with an aunt in Norwalk, although she did not provide the caseworker with any address where they could meet. Therefore, the caseworker was unable to discuss concerns or specific case plan objectives with Mother. The case plan goal was reunification with the legal custodian (Grandmother) or with the children's parents. Mother's initial case plan objective was for her to contact the caseworker if she wished to be considered for visitation or custody and to cooperate with the agency and participate in services necessary to address any identified concerns.

{¶7} Mother and Father did not appear for adjudication. Grandmother stipulated to the allegations in the complaint, and the agency presented evidence to establish its claims in the parents' absence and lack of stipulation. The magistrate found that B.H. and J.H. were abused (endangered), neglected, and dependent children, and that CSB had used reasonable efforts to prevent the children's continued removal from their home.

{¶8} Mother and Father failed to appear at the dispositional hearing. Again, Grandmother waived her hearing rights, and the agency presented evidence in the parents' absence. The magistrate placed the children in the temporary custody of CSB, adopted the agency's case plan as an order, found that CSB had used reasonable efforts to prevent the children's continued removal from their home, granted Grandmother two-hour weekly supervised visitation, and ordered that Mother and Father should request an order of visitation

from the court should they so desire. No party filed objections to the magistrate's decision, and the juvenile court adopted the decision.

{¶9} Neither parent attended the first review hearing. Father had been incarcerated on drug charges. Mother was in IBH Addiction Recovery and had notified the caseworker that she was not interested in reunification. The magistrate found that CSB had used reasonable efforts to prevent the children's continued removal from their home. A couple months later, the agency filed an amended case plan adding a requirement for Grandmother to participate in the children's counseling sessions and follow all recommendations. Mother's sole objective was not modified. She did not file objections to the amended case plan.

{¶10} Mother and Father did not appear at the next two review hearings. After each, the magistrate noted that Mother had not contacted the caseworker or sought any involvement with the children. The magistrate again found that CSB had continued to use reasonable efforts to facilitate reunification. Mother did not move to set aside any of the magistrate's orders.

{¶11} On June 18, 2020, CSB filed a motion for permanent custody of B.H. and J.H. The agency alleged that the children could not or should not be returned to either parent based on their failures to remedy the conditions underlying the children's removal. CSB further alleged that permanent custody was in the children's best interest. Thereafter, the magistrate issued a decision after a sunset hearing in July 2020, and found that the agency had used reasonable efforts to finalize a permanency plan for the children, including, but not limited to, providing ongoing case management and attempting to contact Mother. Mother did not file objections to the magistrate's decision.

{¶12} The mother of C.H. made her first appearance in the case at the sunset hearing and requested that the agency add case plan objectives for her. CSB filed a second amended case

plan that added a substance abuse objective for C.H.'s mother. All other case plan objectives, including Mother's requirement to contact the agency if she wished to become involved in the case, remained the same.

{¶13} Grandmother filed a motion for legal custody of C.H., B.H., and J.H., but withdrew that motion nine days later. No other party filed a dispositional motion prior to the commencement of the permanent custody hearing.

{¶14} The permanent custody hearing began on November 19, 2020. Mother was not initially present. The agency presented the testimony of three medical and/or social work professionals from Akron Children's Hospital regarding the care and condition of B.H. who had relapsed into leukemia. The CSB caseworker then began to testify, but the juvenile court stopped the proceedings when Mother suddenly joined the hearing. As she had never attended any previous hearings and was not represented by counsel, the juvenile court inquired as to her intentions. Because Mother wished to participate in the proceedings and requested counsel, the juvenile court asserted that it would appoint the same attorney who was representing her in another case involving her newborn. The juvenile court then recessed the proceedings until March 3, 2021, to give counsel for Mother time to review the recording of that day's hearing and prepare for further proceedings.

{¶15} Mother filed several dispositional motions prior to the second day of the permanent custody hearing. She moved for a six-month extension of temporary custody; alternatively, legal custody of all three children including C.H; or, alternatively, legal custody of the three children to her mother, the maternal grandmother of B.H. and J.H.

{¶16} CSB again amended the case plan, this time to add particularized objectives for Mother upon her request. Mother was required to obtain a chemical dependency assessment,

follow all recommendations, and submit to random drug screens; obtain a mental health diagnostic assessment and follow all recommendations; and obtain a source of income and demonstrate that she could meet the basic needs of the children, including maintaining a safe home. Mother was permitted to have supervised visits with the children. The case plan noted that Mother agreed with the plan, having jointly developed her objectives with the caseworker. At all times prior to the award of permanent custody, the case plan goal remained reunification of the children with Grandmother or the parents. The goal was not modified to seek adoption until after the juvenile court terminated the parents' parental rights.

{¶17} At the beginning of the second day of the hearing, Grandmother informed the juvenile court that she wished to relinquish any custodial rights she had as to the children. After engaging in colloquy with Grandmother to ensure that she understood the rights she was waiving, the juvenile court accepted Grandmother's relinquishment and excused her from further proceedings. The permanent custody hearing continued for two additional days. Mother presented a case in chief.

{¶18} At the conclusion of the permanent custody hearing, the juvenile court issued a judgment terminating Mother's and Father's parental rights and placing B.H. and J.H. in the permanent custody of CSB. The juvenile court found that the children could not or should not be returned to either parent's custody based on their failures to remedy the conditions that gave rise to the children's removal. The trial court found that an award of permanent custody was in the best interest of B.H. and J.H., while all other requested dispositions were not. The juvenile court further found that CSB had used reasonable efforts to prevent the children's continued removal from their home.

{¶19} Mother filed a timely notice of appeal. She raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED MOTHER'S PARENTAL RIGHTS AND PLACED THE CHILDREN IN THE PERMANENT CUSTODY OF CSB WHEN THE AGENCY DID NOT PROVIDE REASONABLE REUNIFICATION EFFORTS.

{¶20} Mother argues that the juvenile court erred by awarding permanent custody of the children to CSB because the agency failed to make reasonable reunification efforts. This Court disagrees.

{¶21} R.C. 2151.419(A)(1) requires the juvenile court to determine whether the agency has used reasonable reunification efforts at any hearing at which the court removes a child from his home or continues the child's removal from his home. It is well settled that "the statute imposes no requirement for such a determination at the time of the permanent custody hearing unless the agency has not established that reasonable efforts have been made prior to that hearing." (Internal quotations omitted.) *In re L.R.*, 9th Dist. Summit Nos. 29266 and 29271, 2019-Ohio-2305, ¶ 14, quoting *In re A.C.-B.*, 9th Dist. Summit Nos. 28330 and 28349, 2017-Ohio-374, ¶ 22; *see also In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 41-43 (concluding that a reasonable efforts determination is necessary at a permanent custody hearing only if the agency has not demonstrated its use of reasonable efforts prior to that time).

{¶22} In this case, the juvenile court consistently found that CSB had used reasonable efforts to prevent the children's removal from their home. Beginning with the shelter care hearing and continuing with adjudication, the initial disposition, and multiple review hearings,

the trial court made the requisite statutory reasonable efforts determinations. At no time did Mother or any other party challenge those findings.

{¶23} As Mother failed to object or move to set aside any reasonable efforts determinations by the juvenile court, she has forfeited any challenge to the agency's use of reasonable efforts on appeal except for a claim of plain error. *See In re L.R.* at ¶ 18. To demonstrate plain error, Mother must show not only trial court error, but also resulting prejudice. *In re T.G.*, 9th Dist. Summit No. 29658, 2020-Ohio-4802, ¶ 22. As Mother has not provided any transcripts of the prior hearings after which the juvenile court consistently found CSB's use of reasonable efforts, this Court must presume regularity as to those reasonable efforts determinations. *See In re L.R.* at ¶ 18. Accordingly, Mother has failed to demonstrate error by the juvenile court necessary to substantiate plain error.

{¶24} Notwithstanding the above, Mother argues that CSB could not have used reasonable reunification efforts based on the agency's alleged non-compliance with federal law. She presents a form-over-substance argument which cannot prevail. She cites federal provisions which she admits only implicate federal funding for state child welfare agencies. *See, e.g.*, 42 U.S.C. 622, 670, and 671. No federal provisions cited by Mother provide for the negation of any lawful order by a state court.

{¶25} As this Court has frequently noted, the juvenile court derives its sole authority in dependency, neglect, and abuse cases from the comprehensive statutory scheme set out in R.C. Chapter 2151. *E.g., In re A.P.*, 9th Dist. Medina No. 12CA0022-M, 2012-Ohio-3873, ¶ 16. R.C. 2151.412 addresses case plans and further directs the director of job and family services to adopt rules regarding the content, format, development, implementation, and modification of case plans. Those rules are found in various provisions of the Ohio Administrative Code.

**{¶26}** In this case, CSB filed an original and several amended case plans with objectives for Mother in pursuit of reunification with the children. Mother did not object to any case plan. In fact, she worked with the agency to jointly develop her later case plan objectives, and CSB noted her agreement on the case plan. Although she now argues that alleged deficiencies, such as the omission of the child's clergy and fictive kin, in the case plan require reversal, she failed to preserve these issues for appeal. Moreover, she has neither argued nor demonstrated how she was prejudiced by any alleged deficiency. This Court discerns no prejudicial effect requiring reversal of the juvenile court's judgment.

**{¶27}** Based on a review of the record, there is nothing to support Mother's claims of error by the juvenile court or prejudice arising out of any alleged error. Mother's assignment of error is overruled.

### III.

**{¶28}** Mother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETTY SUTTON
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

PAUL GRANT, Attorney at Law, for Appellee.

CHRISTOPHER CRULL, Attorney at Law, for Appellee.

GINA D'AURELIO, Attorney at Law, for B.H.

HOLLY FARAH, Guardian ad Litem.