[Cite as *In re Z.K.*, 2023-Ohio-2150.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: Z.K.
    H.N.
    L.N.

C.A. Nos.    30478
                30479
                30480

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 21-04-0306
                DN 21-04-0307
                DN 21-04-0308

DECISION AND JOURNAL ENTRY

Dated: June 28, 2023

STEVENSON, Judge.

{¶1} Appellant, A.K. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her three minor children in the legal custody of A.C. and M.R. (collectively "Custodians"). This Court affirms.

I.

{¶2} Mother is the biological mother of Z.K., born June 25, 2019; H.N., born December 31, 2012; and L.N., born December 4, 2005. The father of H.N. and L.N. participated in the trial court proceedings but did not appeal the legal custody judgment. The alleged father of Z.K. is deceased.

{¶3} The children were removed from Mother's custody on April 20, 2021, pursuant to Juv.R. 6 after a police officer responded to a call and found Mother wandering barefoot in the

woods near her home with then one-year-old Z.K. Mother was covered in mud because she had fallen and she and Z.K. were not dressed appropriately for the weather, which was rainy and in the 40-degree range. Mother informed the officer that, after her older children had gone to school an hour or two earlier, she and Z.K. had gone on a reflective walk to look for God. The police officer noted that Mother was disoriented and was speaking and behaving erratically. The officer went to Mother's home and observed that the home was deplorable and uninhabitable.

{¶4} The police officer believed that Mother was having a mental health emergency, so he took her to Akron City Hospital, where she was admitted for psychiatric observation due to her "strange behavior." Medical professionals initially believed that Mother was exhibiting symptoms of a methamphetamine overdose. Mother tested negative for methamphetamine, however, but positive for amphetamine, which doctors opined was the reason for her abnormal behavior. After a 16-hour observation period at the hospital, Mother appeared to be stable and was released from the hospital. According to the hospital records, she was advised to follow up with a drug treatment specialist in the next three to five days, but the record does not reveal whether she did any follow up drug treatment at that time.

{¶5} Summit County Children Services Board ("CSB") filed complaints, alleging that Z.K., H.N., and L.N., then ages one, eight, and 15 years old, were neglected and dependent children primarily because of Mother's drug use and/or unstable mental health and the unsafe and unsanitary condition of the home. The trial court later adjudicated the children dependent for those reasons. On June 10, 2021, the trial court placed the children in the temporary custody of CSB and adopted the case plan as an order of the court.

{¶6} Among other things, the court-ordered case plan required Mother to schedule an appointment with an agency approved by CSB to obtain a mental health and substance abuse

assessment "within 7 days" of the court adopting the case plan, follow all recommendations from that assessment, and submit to drug testing as requested by CSB. The case plan also required Mother to obtain and maintain stable income and appropriate housing.

{¶7} For the next six months, however, Mother did not work on the reunification goals of the case plan. CSB made referrals for Mother to have a dual substance abuse and mental health assessment with Summit Psychological Associates or Community Health Center, but Mother did not obtain an assessment at either agency. For many months during this case, Mother did not maintain contact with CSB, the guardian ad litem, or the juvenile court. The caseworker was unable to reach Mother when she attempted to contact her via telephone or by appearing at her home and leaving messages for her.

{¶8} By the time the caseworker was able to contact Mother many months into this case, she learned that Mother had been evicted from her home and continued to lack employment or any other stable source of income. Mother agreed to only one drug screen requested by CSB and that was in December 2021, six months after the case plan was adopted. At that time, Mother tested negative for all drugs tested, but the caseworker remained concerned about Mother's irrational behavior. The magistrate found in an order following the December 2021 review hearing that Mother continued to express "delusional thinking" to the caseworker and made repeated statements that she "needs to apologize to both God and Satan." Mother did not move to set aside those factual findings from the review hearing order. *See* Juv.R. 40(D)(2)(b).

{¶9} During January 2022, more than six months after the trial court adopted the case plan, Mother obtained a substance abuse assessment at Interval Brotherhood Home (IBH). There is little evidence about the IBH assessment in the record, except that it recommended that Mother engage in ongoing counseling. Mother did not engage in any counseling for the next several

months, missed a review hearing and a semi-annual administrative review of her case plan progress, did not maintain contact with the caseworker or the guardian ad litem, and did not regularly visit her children.

{¶10} On the other hand, the children were "happy and doing extremely well" in their out-of-home kinship placement. At the beginning of this case, CSB had placed the children in three separate foster homes for a brief period. After the agency completed a kinship assessment of Custodians (A.C. and M.R.) and approved them for placement, it placed all three children in their home at the end of June 2021. A.C. is the best friend of Mother's sister and is also a long-time friend of Mother. A.C. had known each of Mother's children since birth and maintained a relationship with them throughout their lives.

{¶11} On March 22, 2022, CSB moved to have the children placed in the legal custody of Custodians. Shortly afterward, the father of H.N. and L.N. alternatively moved for legal custody of his two children or an extension of temporary custody. A hearing on the legal custody motions was originally set for April 8, 2022, but the parties appeared for a hearing on that date and agreed to continue the hearing until June 10, 2022. Following the June hearing before a magistrate, the children were placed in the legal custody of Custodians.

{¶12} Mother filed objections to the magistrate's decision, which were overruled by the trial court. The trial court entered an independent judgment placing the children in the legal custody of Custodians. Mother appeals and raises five assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED WHEN IT GRANTED LEGAL CUSTODY OF MOTHER'S MINOR CHILDREN TO [CUSTODIANS] AS [CSB] FAILED TO DEMONSTRATE WITH CLEAR AND CONVINCING EVIDENCE THAT IT

WAS IN THE CHILDREN'S BEST INTEREST. THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} Mother's first assignment of error is that the legal custody judgment was not supported by clear and convincing evidence, but that is not the appropriate burden of proof required to support a legal custody judgment. Instead, an award of legal custody must be supported by the lesser standard of a preponderance of the evidence. *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7. "Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value." (Internal quotations omitted.) *Id.* In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal citations and quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶14} The trial court was required to focus its legal custody decision on the specific statutory factors for determining the best interest of the child. "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. No specific test or set of criteria is set forth by statute regarding an award of legal custody, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain

No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23.

{¶15} "[T]he primary focus at the legal custody hearing was on the current parenting ability of each potential custodian and whether it was in the best interest of the children to be permanently placed in the legal custody of [either] of them." *In re K.C.*, 9th Dist. Summit Nos. 26992 and 26993, 2014-Ohio-372, ¶ 20. The juvenile court is guided by the best interest factors enumerated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, and the child's need for permanence. R.C. 2151.414(D)(1)(a)-(e)[1]; *see also In re B.C.*, 9th Dist. Summit Nos. 26976 and 26977, 2014-Ohio-2748, ¶ 16.

{¶16} The juvenile court may also consider the best interest factors in R.C. 3109.04(F)(1). *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850 and 15CA010860, 2017-Ohio-1, ¶ 17. While many factors overlap with those set forth in R.C. 2151.414(D)(1), separate factors that are relevant in this case are the children's adjustment to their "home, school, and community[]" and the proposed custodian's likelihood to honor and facilitate visitation or parenting time. R.C. 3109.04(F)(1)(d),(f).

{¶17} During this case, Mother's interaction with the children was not consistent. She initially had visits that were supervised by Custodians. Because those visits occurred on weekends when the caseworker and guardian ad litem were not working, there is little information in the record about how those visits went. For reasons not explained in the record, Mother's visits with

---

[1] R.C. 2151.414(D)(1)(e) also requires the trial court to consider whether any of the factors set forth in R.C. 2151.414(E)(7)-(11) apply to this case, but none of those factors are relevant here.

the children were later moved to the family interaction center ("FIC") to be supervised by CSB personnel. Because the caseworker was unable to reach Mother, however, no visits were scheduled for an extended period. Visits between Mother and the children resumed within the few months before the legal custody hearing. During that time, Mother had three supervised visits with her children.

{¶18} Mother's visits remained supervised throughout this case because she failed to comply with the substance abuse and mental health component of the case plan and CSB remained concerned about her erratic behavior and failure to maintain contact with the agency. Mother testified that she had started counseling two months before the hearing, but she did not introduce any evidence about that counseling except her own brief testimony that she was attending. Moreover, although Mother testified at the hearing that she was willing to submit to oral drug swabs to prove that she was leading a sober lifestyle, she had submitted to only one drug test during this case, six months before the hearing. Mother also failed to obtain and maintain stable income or housing. At the time of the hearing, Mother was again about to be evicted from another home.

{¶19} In sharp contrast to Mother's lack of stability and her inconsistent interaction with her children, the children's interaction with Custodians had been ongoing and positive throughout this case. The trial court heard undisputed testimony that the children had adjusted well to the safe and secure environment in Custodian's home and had learned to rely on Custodians as loyal and responsible caregivers. The caseworker explained that the children had the unwavering support of Custodians, particularly A.C. The school performance of the older two children had improved significantly because A.C. worked with them on their schoolwork and had helped to prevent H.N. from failing the third grade. Custodians had developed a close and loving relationship with all three of the children and were meeting all their needs.

{¶20} Custodians had facilitated an ongoing relationship between Mother and the children, and the caseworker testified that she believed that they would continue to do so. Each of the custodians also testified that they believed that an ongoing relationship between the children and Mother was important and that they would continue to facilitate that relationship.

{¶21} The guardian ad litem spoke on behalf of the children. The older two children had informed him that they wanted to remain in the home of Custodians. The youngest child was too young to express her wishes. The guardian ad litem opined that legal custody to Custodians was in the children's best interest because the children were happy and comfortable in Custodians' home and Mother had done little to address any of her parenting problems.

{¶22} The children's custodial history before this case began is not clear from the record. At the time this case began, however, they were living in an unsanitary home and Mother was found by the police in a delusional state while wandering for hours outside with her young child who was not appropriately dressed for the wet and cool weather.

{¶23} During this case, by the time of the hearing, the children had spent nearly one year living in a temporary placement with Custodians. In that time, the children had adjusted well to living in Custodians' stable and secure home. On the other hand, Mother had nearly a year to work on the reunification requirements of the case plan but had taken few steps to work toward stabilizing her substance abuse and/or mental health problems that prevented her from providing her children with a stable home.

{¶24} The children needed a legally secure permanent placement and the trial court reasonably concluded that granting legal custody to Custodians would provide them with a stable permanent home. Mother has failed to demonstrate that the trial court lost its way by concluding

that legal custody to Custodians was in the children's best interest. *See Eastley* at ¶ 20. Mother's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED [ITS] DISCRETION WHEN IT DENIED MOTHER'S MOTION FOR AN EXTENSION OF TIME, AS THERE [WERE] FOUR MONTHS STILL REMAINING ON THE FIRST SIX-MONTH EXTENSION.

**{¶25}** Mother's second assignment of error is that the trial court erred by denying her oral request at the June 10 legal custody hearing for an extension of temporary custody. Specifically, she asserts that, because the trial court granted a first six-month extension of temporary custody on April 12, 2022, the trial court should not have moved forward with a hearing until the six-month extension expired four months later. Mother's sole argument is that the trial court abused its discretion when it "denied [her] the additional four months of the original extension," but she cites no authority to support her argument.

**{¶26}** To begin with, the order of temporary custody to CSB was an order that placed the children in CSB's legal custody and that, by definition, could "be terminated at any time at the discretion of the court[.]" Juv.R. 2(OO); R.C. 2151.011(B)(57). Moreover, Mother's argument overlooks the specific circumstances under which temporary custody was extended in this case. The parties initially appeared for the legal custody hearing on April 8, 2022. At that time, according to the transcript of that hearing, the parties agreed that CSB and Father would hold their respective legal custody motions in abeyance. Mother had no motions pending at that time.

**{¶27}** At the time of the April 8 hearing, this case had been pending for almost one year, and the trial court's initial order of temporary custody to CSB was due to expire before the end of April. *See* R.C. 2151.353(G). Consequently, in its request to postpone the hearing on its legal custody motion, CSB explicitly requested a "six-month extension with an expedited hearing[.]"

CSB asked the court to reset the hearing on the legal custody motions within 30 to 45 days, but the parties and attorneys ultimately agreed that June 10 worked with their schedules. All parties agreed to set the legal custody hearing for June 10, two months after the requested six-month extension.

{¶28} On April 12, 2022, the magistrate journalized a sunset dispositional decision that granted a six-month extension of temporary custody but also set the hearing on the legal custody motions for June 10, 2022. The trial court adopted the magistrate's decision the same day. Mother filed no objection to the trial court's order adopting the decision and setting the hearing for June 10.

{¶29} Because Mother filed no objection to the trial court setting the legal custody hearing within the extension period, she has failed to preserve this alleged error under Juv.R. 40(D). Pursuant to Juv.R. 40(D)(3)(b)(iv), "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." Mother has not argued plain error and, in fact, has cited no authority to support the premise of her argument that the trial court abused its discretion by considering the pending legal custody motions on June 10, as agreed by the parties, because it had also granted a first six-month extension of temporary custody. Mother's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHEN IT GRANTED LEGAL CUSTODY TO NON-RELATIVES WHEN THE AGENCY DID NOT PROVIDE REASONABLE REUNIFICATION EFFORTS.

{¶30} Mother's third assignment of error is that the trial court erred by placing the children in the legal custody of Custodians because CSB had failed to make reasonable efforts to reunify the children with Mother. R.C. 2151.419 sets forth the requirement for the agency to prove,

and the trial court to find, that CSB made reasonable efforts in this dependency case. R.C. 2151.419(A) specifically required CSB to establish reasonable efforts toward reunification or to prevent the continued removal of these children from the home at the legal custody hearing because it is a hearing conducted pursuant to R.C. 2151.353(A)(3) "at which the court removes a child from the child's home or continues the removal of a child from the child's home[.]"

{¶31} Although Mother asserts that CSB failed to make reasonable reunification efforts, she does not explain what services the agency should have offered her but did not. CSB presented evidence that it had tailored a case plan with services to address Mother's most obvious parenting needs: substance abuse and/or mental health problems, and her lack of housing and income. CSB had made referrals to service providers for Mother and provided her with bus passes to enable her to get to and from the providers. Mother, however, failed to follow through with those services or maintain contact with CSB for six months after the case plan was adopted by the trial court. This case began with Mother being admitted to a hospital psychiatric ward because of serious concerns about her delusional behavior, yet she failed to avail herself of services that CSB made available to her. Mother's failure to achieve reunification with her children was the result of her own inaction, not a lack of reasonable efforts by CSB. Mother's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED [ITS] DISCRETION BY DENYING MOTHER'S MOTION FOR A CONTINUANCE.

{¶32} Mother's fourth assignment of error is that the trial court erred by denying her request for a continuance of the hearing. During the hearing, as CSB was questioning the caseworker about the substance abuse assessment that Mother obtained at IBH five months earlier, Mother's counsel requested a continuance of the hearing so he could review the IBH assessment,

which had not been provided to him in discovery and he had never seen. The caseworker did not have the assessment with her to share with the other parties. The trial court denied counsel's request for a continuance, which Mother asserts was an abuse of discretion.

{¶33} Even if Mother could demonstrate that the trial court abused its discretion by denying her request for a continuance, she cannot establish reversible error unless she also shows resulting prejudice. *See Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, ¶ 20. Although Mother argues on appeal that she "was severely prejudiced[,]" by the trial court's failure to grant a continuance, she has failed to argue how her case was harmed because her counsel was not granted additional time to review the IBH assessment.

{¶34} The IBH assessment itself was not admitted into evidence and the trial court explicitly stated that it would assign little weight to any testimony about the assessment. CSB offered only inconsequential testimony about the assessment, as the caseworker was unable to recall whether there was a diagnosis in the assessment, and, if so, what it was; and/or the specific recommendations of the assessment. In its decision, the trial court noted only that the assessment had been performed several months earlier, and that the evidence was not disputed that Mother did not return to IBH to go over the results of the assessment or engage in any follow-up treatment there. Because Mother has failed to demonstrate prejudicial error, her fourth assignment of error is overruled.

**ASSIGNMENT OF ERROR V**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED [ITS] DISCRETION BY OVERRULING MOTHER'S OBJECTIONS AND PERMITTING UNDULY PREJUDICIAL AND INADMISSIBLE HEARSAY.

{¶35} Mother's final assignment of error is that the trial court erred in overruling her objection to the admission of certain testimony at the legal custody hearing. "The decision to admit or to exclude evidence is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion." *Falah v. Falah*, 9th Dist. Medina No. 20CA0039-M, 2021-Ohio-4348, ¶ 7.

{¶36} Specifically, Mother asserts that the trial court abused its discretion by allowing the caseworker to briefly testify about seeing a post on Mother's Facebook page about Mother claiming to be God, which suggested to her that Mother was again having "religious delusions." The caseworker explained that the Facebook post had been brought to her attention by Custodians because the oldest child, L.N., had seen it and was concerned that Mother was continuing to exhibit symptoms of unstable mental health and/or drug abuse. The caseworker further explained that she had not discussed the post with Mother because she had not been able to reach her for the past two months.

{¶37} Again, even if the trial court erred in allowing the testimony about Mother appearing to have "religious delusions," Mother has failed to demonstrate that she suffered resulting prejudice. *See Beard* at ¶ 20. Mother asserts that her trial counsel was not able to effectively cross-examine the caseworker about the Facebook post, but her counsel did not attempt to question the caseworker or Mother about it. Insofar as Mother suggests she was prejudiced by the caseworker's lay characterization of the post as depicting "religious delusions" by Mother, the record in this case is filled with unchallenged factual findings and other evidence, offered through

the statements of lay witnesses, that Mother appeared to be having religious delusions at various points during this case.

{¶38} Throughout this one-year case, Mother had raised no objections to similar statements earlier in the record made by the caseworker and the police officer who found Mother wandering in the woods at the beginning of this case. Mother was admitted to the hospital for observation and was tested for drugs. According to the 149-page medical record from her hospital stay, medical professionals opined that her delusional behavior was caused by an amphetamine overdose. Consequently, her delusional behavior and drug usage were the primary focus of this case. The facts were not disputed, however, that Mother had done little to address those problems.

{¶39} Because there was ample other evidence in the record about Mother experiencing religious delusions, she has failed to demonstrate that she was unduly prejudiced by the caseworker's statements at the legal custody hearing. Mother's fifth assignment of error is overruled.

### III.

{¶40} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
SCOT STEVENSON
FOR THE COURT

CARR, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

JASON D. WALLACE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

STEPHEN GRACHANIN, Attorney at Law, for Appellee.

NOWAR KATIRJI, Guardian ad Litem.