[Cite as *In re J.S.*, 2024-Ohio-2353.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: J.S.
    R.S.

C.A. Nos.    30783
               30784


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 20 09 0591
               DN 20 10 0685

DECISION AND JOURNAL ENTRY

Dated: June 20, 2024

---

FLAGG LANZINGER, Judge.

{¶1} Appellant, T.S. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed one of her minor children in the legal custody of a maternal great aunt ("Aunt") and another in the legal custody of her maternal grandmother ("Grandmother"). This Court affirms.

I.

{¶2} Mother is the biological mother of J.S., born December 18, 2015; and R.S., born March 15, 2013. Mother has several other children, but they are not parties to this appeal. The fathers of J.S. and R.S. did not appeal the trial court's judgment.

{¶3} For reasons not clear from the record, J.S. and R.S. had each resided with their respective custodians for extended periods of time before this case began. J.S. had spent most of

his life living in Aunt's home and R.S. had lived with Grandmother for approximately two years in a prior juvenile case.

{¶4} The most recent case with this family began on September 17, 2020, when Summit County Children Services Board ("CSB") filed a complaint to allege that J.S. was an abused and dependent child because Mother had been excessively punishing him, he wanted to live with Aunt rather than with Mother, and Mother had refused to work on a voluntary safety plan with CSB. The agency was concerned about Mother's history of volatile behavior and untreated mental health issues. J.S. was initially placed under an emergency order of protective supervision by CSB, but he was later removed from Mother's home. Approximately one month later, CSB filed a complaint to allege that R.S. was a dependent child because, although Mother had begun engaging in mental health services and was receiving in-home parenting assistance, she was overwhelmed with caring for the children who remained in her home. At that time, Mother had three other children in her custody, who were also removed from the home, but those children had lived with Mother for most of their young lives and were later returned to her custody.

{¶5} Mother voluntarily waived her right to a contested adjudicatory hearing and admitted to the allegations of dependency as set forth in the complaints. The juvenile court adjudicated J.S. and R.S. dependent, later placed them in the temporary custody of CSB, and adopted the case plan as an order of the court. Throughout this case, J.S. was placed in the home of Aunt and R.S. was placed with Grandmother.

{¶6} Upon motions filed by CSB, the trial court granted a first and later a second six-month extension of temporary custody because Mother was making progress on the reunification goals of the case plan. Mother was engaging in mental health services and stabilizing her life. She was able to reunify with three other children who had been removed from her custody, but she was

focusing most of her reunification efforts on meeting the needs of those children, as well as another child who was born during this case. Mother admittedly had her hands full with her four other children and took a less active role in the lives of J.S. and R.S.

{¶7} The relative caregivers of J.S. and R.S., on the other hand, were able to dedicate themselves to meeting the daily needs of each child. Aunt lived with her biological 12-year-old child in addition to J.S., and Grandmother had no other children living in her home. Aunt and Grandmother were closely involved in the children's schooling and had enrolled them in sports and other extracurricular activities. They had also started both children in counseling to address the instability in their lives. The children had adjusted to living with their relative caregivers and their academic performance and behavior improved during this case.

{¶8} Ultimately, the matter proceeded to a final dispositional hearing on alternative motions for J.S. and R.S. to be placed either in the legal custody of Mother or the respective non-parent relative. Although CSB had initially supported returning J.S. and R.S. to the legal custody of Mother under an order of protective supervision, it later withdrew that motion and filed a motion for J.S. to be placed in the legal custody of Aunt and for R.S. to be placed in the legal custody of Grandmother.

{¶9} Following the final dispositional hearing, the magistrate decided that J.S. should be placed in the legal custody of Aunt and that R.S. should be placed in the legal custody of Grandmother. Mother filed timely objections to the magistrate's decision, which were later overruled by the trial court. The trial court placed J.S. in the legal custody of Aunt and R.S. in the legal custody of Grandmother. Mother appeals and raises two assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE COURT ERRED TO MOTHER'S DETRIMENT IN FAILING PROPERLY
TO APPLY THE STATUTORY REQUIREMENTS FOR A BEST INTERESTS
FINDING AS REQUIRED BY R.C. §2151.414(D).

**{¶10}** Mother challenges the trial court's determinations that legal custody of J.S. to Aunt and R.S. to Grandmother were in the children's best interest. On appeal, an award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence.

> Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. In other words, when the best interest of the child is established by the greater weight of the evidence, the trial court does not have discretion to enter a judgment that is adverse to that interest. Thus, our standard of review is whether a legal custody decision is against the manifest weight of the evidence.

(Internal citations and quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7. Moreover, as a party moving for the child to be returned to her legal custody, Mother had her own burden of proving by a preponderance of the evidence that the best interest factors supported placing the children in her legal custody rather than in the legal custody of Aunt and/or Grandmother. *In re A.W.*, 9th Dist. Lorain No. 20CA011671, 2021-Ohio-2975, ¶ 17, citing *In re T.R.*, 9th Dist. Summit Nos. 25179 and 25213, 2010-Ohio-2431, ¶ 27.

**{¶11}** In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶12} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. No specific test or set of criteria is set forth by statute regarding an award of legal custody, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23.

{¶13} "[T]he primary focus at the legal custody hearing was on the current parenting ability of each potential custodian and whether it was in the best interest of the child[] to be permanently placed in the legal custody of [either] of them." *In re K.C.*, 9th Dist. Summit Nos. 26992 and 26993, 2014-Ohio-372, ¶ 20. The juvenile court is guided by the best interest factors enumerated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17.

{¶14} Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, and the child's need for permanence. R.C. 2151.414(D)(1)(a)-(d); *see also In re B.C.*, 9th Dist. Summit Nos. 26976 and 26977, 2014-Ohio-2748, ¶ 16. R.C. 2151.414(D)(1)(e) also requires the trial court to consider whether any of the factors set forth in R.C. 2151.414(E)(7)-(11) apply to this case, but those factors are not relevant here.

{¶15} The juvenile court may also apply the best interest factors in R.C. 3109.04(F)(1). *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850 and 15CA010860, 2017-Ohio-1, ¶ 17. While many factors overlap with those set forth in R.C. 2151.414(D)(1), separate factors that are relevant in

this case are the child's adjustment to their "home, school, and community[]" and the proposed custodian's likelihood to honor and facilitate visitation or parenting time. R.C. 3109.04(F)(1)(d),(f).

{¶16} The trial court explicitly considered the children's interaction and interrelationships with Aunt, Grandmother, and Mother, and their adjustment to home, school, and community. Aunt and Grandmother had consistently provided a safe, stable, and loving home for each child. Throughout this two-year case and for many years prior to the case, the children had developed strong bonds with their respective relative caregivers and had adjusted to living in each home, while their relationship with Mother had become more distant.

{¶17} CSB had been involved with J.S. at different points in his life, beginning when he was an infant. He was placed in Aunt's home at that time and later in the joint custody of Mother and Aunt while Mother and the child both lived with Aunt. During this case, J.S. lived solely with Aunt for more than two years. Throughout his 7-year lifetime, J.S. lived alone with Mother for only about two months. R.S. was also involved in a prior CSB case several years ago. She was removed from Mother's custody and lived with Grandmother in the prior case for two years and in this case for another two years. Grandmother had assisted Mother in meeting the child's needs and had been closely involved with R.S. throughout her life.

{¶18} During the two and one half years that this case was pending, Mother did not visit consistently with J.S. or R.S. For the first year of this case, Mother had weekly, supervised visits at the family interaction center. Mother's visits eventually progressed to unsupervised visits in her home. For an unspecified period, CSB had permitted Mother to transport the children until the caseworker learned that Mother's driver's license and vehicle registration had been suspended because of a traffic accident. After the caseworker informed Mother that she could no longer drive

the children, Mother lashed out at the caseworker, refused to allow the caseworker or anyone else to drive the children, and told her that she was done with CSB and no longer wanted to visit the children. For more than one month, Mother refused to cooperate with the caseworker to arrange other transportation. Mother and the caseworker later resolved the issue but, during the time that Mother refused to work with CSB, she missed several scheduled visits with J.S. and R.S.

{¶19} Prior to that time, Mother had missed other visits with J.S. and R.S., including a Thanksgiving visit with J.S. because she was too busy with the other children at her home. The caseworker expressed concern that Mother did not make other arrangements for J.S. but instead excluded him from her family holiday gathering at the last minute. Both children were disappointed when Mother failed to attend scheduled visits.

{¶20} At the time of the hearing, R.S. was 10 years old and J.S. was seven. Each had expressed their wishes about where they wanted to live. R.S. wanted to be returned to Mother's home, but J.S. consistently told others that he wanted to remain in Aunt's home. Their wishes, and the recommendation of the guardian ad litem, were also related to their respective custodial histories and their need for permanence after a lengthy history of juvenile court and CSB involvement.

{¶21} Mother admitted that her relationship with J.S. was "[n]ot good[,]" that they do not have a bond, and that she does not even know his favorite color. She agreed that J.S. was more closely bonded with Aunt. According to Aunt, Mother did not make phone calls to J.S. and Aunt was unable to call Mother because she had not provided Aunt with her phone number. Mother admitted that she had not given Aunt her most recent phone number because, when Aunt had her prior phone number, she would call her too often and trigger her anxiety.

{¶22} Despite the expressed wishes of R.S., the guardian ad litem opined that legal custody with the respective relatives was in the best interest of both J.S. and R.S. He emphasized that each child had spent significant portions of their lives with those relatives, who had consistently met their needs and provided them with stable and loving homes. J.S. had lived with Aunt for almost his entire life. Between this case and a prior case, R.S. lived with Grandmother for a total of four years of her 10-year lifetime. During the times that R.S. lived with Mother, Grandmother maintained a bond and was an additional support person for the child.

{¶23} Moreover, the evidence was clear that Aunt and Grandmother were actively involved in meeting the daily needs of J.S. and R.S., but Mother was not. Aunt and Grandmother had enrolled the children in counseling and extracurricular activities, and they were adjusting well to the stability of their homes. Mother had been encouraged to reach out to the counselors and to attend the children's activities, but she did not.

{¶24} While living with Mother, the children suffered academically. Aunt and Grandmother had taken an active role in the children's schooling and, consequently, their school performance and behavior had improved during this case. While they visited Mother's home, even for full weekends, Mother did not ensure that they did their homework. Mother testified that she wanted to have fun with them when they visited, not make them do homework. The caseworker and the school counselor for R.S. had expressed concern that Mother did not seem to appreciate the importance of the children keeping up with their schoolwork. The caseworker also expressed concern that R.S. had recently been diagnosed with prediabetes, yet Mother had not taken an active role in addressing that problem. Mother blamed Grandmother for the child's health problem and insisted that no one was going to tell her what to feed her child.

**{¶25}** Furthermore, Mother had stipulated to an adjudication that both her children were dependent because of her mental health problems and inability to consistently meet her children's needs. Nevertheless, more than two years later, Mother accepted no responsibility for the custodial situation of J.S. and R.S. or her lack of a strong bond with them. Throughout her testimony at the hearing, Mother blamed the custodial situations of J.S. and R.S. on Aunt, Grandmother, CSB, and/or the other children in her custody.

**{¶26}** Finally, both Aunt and Grandmother realized that it was important for each child to maintain a relationship with Mother and expressed their willingness to abide by any visitation order to assure that Mother sees the children. Aunt further testified that, until Mother can legally drive again, Aunt's daughter could help with transporting J.S. to and from visits with Mother.

**{¶27}** Given the evidence before the trial court, Mother has failed to demonstrate that the trial court lost its way by placing J.S. in the legal custody of Aunt and R.S. in the legal custody of Grandmother rather than returning them to her legal custody. *See Eastley* at ¶ 20. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

> THE COURT ABUSED ITS DISCRETION AND ERRED TO MOTHER'S DETRIMENT WHEN IT DETERMINED AT THE FINAL DISPOSITIONAL HEARING THAT [CSB] HAD MADE REASONABLE EFFORTS AT REUNIFICATION AND PERMANENCE AS REQUIRED IN R.C. §2151.419(A)(1) BECAUSE THAT FINDING WAS NOT SUPPORTED BY [A] PREPONDERANCE OF THE EVIDENCE AND DID NOT ADDRESS THE HISTORY OF [CSB]'S NON-COMPLIANCE.

**{¶28}** Mother's second assignment of error is that the trial court erred in finding that CSB made reasonable efforts to reunify her with J.S. and R.S. At certain hearings during which a juvenile court removes a child from the home or continues the removal of the child from the home, R.C. 2151.419(A) requires the trial court to make findings that the agency made "reasonable efforts

to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home."

{¶29} Most of Mother's argument challenges the requirements of R.C. 2151.419(A), not the actual reasonable efforts findings in this case. Specifically, Mother relies on case law that addresses whether the trial court is required to find that the agency made reasonable reunification efforts at the permanent custody stage of the proceedings. *See*, *e.g*., *In re B.H*., 9th Dist. Summit Nos. 29998 and 29999, 2021-Ohio-4152, ¶ 21, citing R.C. 2151.419(A)(1) and *In re C.F*., 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 41-43. Because Mother has appealed from a legal custody judgment, not a permanent custody judgment, that line of legal reasoning is not applicable here. In fact, this Court has explicitly held that R.C. 2151.419(A) requires that the trial court make a reasonable efforts finding following a legal custody hearing "because it is a hearing conducted pursuant to R.C. 2151.353(A)(3) "'at which the court removes a child from the child's home or continues the removal of a child from the child's home[.]'" *In re Z.K*., 9th Dist. Summit Nos. 30478, 30479, and 30480, 2023-Ohio-2150, ¶ 30, quoting R.C. 2151.419(A).

{¶30} The trial court found that CSB had made reasonable reunification efforts in this case. CSB had arranged for Mother to engage in mental health treatment and other services under the case plan, which she did, and Mother was able to complete those services. In fact, CSB assisted Mother in reunifying with three of her other children.

{¶31} Mother alleges only one deficiency in the efforts that CSB provided to reunify her with J.S. and R.S. She asserts that, after CSB learned that she had no valid driver's license or vehicle registration, it "did not provide the children for visits consistently[.]" The record fails to support her argument. The only evidence presented about Mother's transportation problems came from the testimony of the caseworker. She testified about learning that Mother could not legally

drive and informing her that she could not transport the children. For more than one month, the caseworker attempted to arrange alternative transportation for the visits, but Mother refused to cooperate with her. Mother later agreed to work with the caseworker to arrange suitable transportation for the children and the temporary problem was resolved. Mother did not dispute any of that testimony.

{¶32} Mother has failed to demonstrate that the trial court erred in finding that CSB made reasonable efforts to reunify her with J.S. and R.S. Mother's second assignment of error is overruled.

### III.

{¶33} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, P. J.
CARR, J.
CONCUR.

APPEARANCES:

ALEXANDRA HULL, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.

JAMES E. BRIGHTBILL, Guardian ad Litem.